Margaret **STRALEY**, Plaintiff,

v.

**GASSAWAY MOTOR COMPANY, INC.,**
a corporation, Individually and in its
official capacity, Defendant.

**Civ. A. No. 73–53.**

United States District Court,
S. D. West Virginia,
Charleston Division.

June 6, 1973.

George R. Higinbotham, Charleston, W. Va., for plaintiff.

William M. Kidd, Sutton, W. Va., for defendant.

## MEMORANDUM ORDER

KENNETH K. HALL, District Judge.

In her complaint in this action, plaintiff, Margaret Straley, alleges that the defendant, Gassaway Motor Company, Inc., through its garage, estimated transmission repair costs on her 1965 Ford Falcon automobile would be between $60 and $70, but that, upon making the repairs without further contacting her, the charges total $230.11, greatly more than the vehicle, valued at approximately $150.00, is worth. Defendant claims a repairman's lien, refuses to surrender possession of the automobile until the charges are paid, and threatens to advertise and sell the vehicle pursuant to provisions of West Virginia Code, §§ 38–11–3 and 38–11–14. Plaintiff endeavored to regain possession of the automobile through Justice of the Peace proceedings, but was advised that she would be required to provide bond in an amount double the charges and would be obliged to employ an attorney because of community factors involved.

Jurisdiction in this Court is based on 28 U.S.C. § 1343. Plaintiff seeks declaratory and injunctive relief under 28 U.

S.C. §§ 2201–2202, and 42 U.S.C. § 1983 and 1988. Upon her affidavit pursuant to provisions of 28 U.S.C. § 1915, plaintiff was allowed to proceed in this action in forma pauperis.

Plaintiff claims that the West Virginia statutes, Code, §§ 38–11–3 and 38–11–14, allowing defendant to retain possession of and to advertise and sell her automobile in satisfying the repairman's lien for repair charges, is in violation of the due process provisions of the Fourteenth Amendment to the United States Constitution. She asks that the state statutes be declared unconstitutional and that defendant be enjoined from withholding her automobile from her and from advertising and selling the vehicle to satisfy the repair charge obligation. She asks that the Court require defendant to return the automobile to her and that she be awarded costs and counsel fees in this action.

Defendant's motion to dismiss the action was denied. Defendant's answer asserts that the complaint fails to state a cause of action and that no substantial federal question is here involved.

At hearings before the Court, understandings were reached between the parties that defendant would take no action to dispose of the automobile during proceedings in this cause and that plaintiff's request for a temporary restraining order would not be pressed. At the hearing on April 20, 1973, the parties agreed to submit the action to the Court for decision on the record. Later plaintiff filed a motion for summary judgment, supported by three affidavits and a memorandum of law and argument. Defendant has not responded thereto. Rule 56(e). Rule 56(c) provides that summary judgment shall be rendered forthwith if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is upon plaintiff to sustain her motion. Wright, Law of Federal Courts, § 99 (1970).

The West Virginia improver's or repairman's lien laws, like the state's landlord distress laws, are of ancient origin. The words "automobile" and "motor vehicle" are not mentioned in the statutes here challenged, but, in practice and application, a person who repairs an automobile for charges "may retain possession thereof until such charges are paid." W.Va.Code, § 38–11–3.[1] The West Virginia Supreme Court of Appeals, over fifty years ago, referred to the repairman's lien as a common-law lien. Stallard v. Stepp, 91 W.Va. 60, 112 S.E. 184 (1922). No decision of the state's highest court is found applying the improver's lien enforcement statute in an automobile repairman's lien enforcement proceedings. W.Va.Code, § 38–11–14.[2] The statute provides that any "person holding personal property in his possession under a lien" may, un-

---

1. West Virginia Code, § 38–11–3, reads as follows:

   A person who, while in possession thereof, makes, alters, repairs, stores, transports, or in any way enhances the value of an article of personal property, or boards, pastures, feeds, trains, improves or transports any animal, shall have a lien upon such article or animal while lawfully in the possession thereof, for the charges agreed upon, or, if no charges be agreed upon, then for his just and reasonable charges for the work done or the board or storage or transportation furnished, and may retain possession thereof until such charges are paid. Such lien shall be good against the person who deposited the property with the lienor, and against any other person by whose authority or with whose consent the property was deposited. If two or more articles of personal property are made, altered, repaired, stored, transported or enhanced in value as aforesaid, or two or more animals are boarded, pastured, fed, trained, improved or transported as aforesaid, under one contract or agreement, any one or more of such articles or animals may be held under the lien, hereinbefore mentioned, for all of the charges upon all such articles included in such contract or agreement. (1931 Code, § 38–11–3.)

2. West Virginia Code, § 38–11–14, reads as follows:

   Any person holding personal property in his possession under a lien or pledge may satisfy such lien in any manner

less the lien is satisfied by arrangements between the parties, give written notice to the property owner and any others having interests therein that, unless the lien charges are paid, the property will be advertised and sold at auction to satisfy the lien. The property owner may pay the lien charges and costs and redeem the property. In this case plaintiff asserts that the lien charges are excessive—greatly more than the value of the automobile—and that neither she nor her husband is financially able to pay the charges. Plaintiff states she "sought to institute legal action to regain possession of said vehicle in a justice of the peace court in Braxton County, but was informed that a bond double the amount of the cost of repairs would be required." W. Va.Code, § '55–6–1. Further, she alleges that defendant "remains in possession of plaintiff's property and refuses to return said automobile until the full amount, unilaterally imposed, is tendered, or threatens to sell plaintiff's automobile to satisfy the unsubstantiated claim." She asserts that defendant's "retention of plaintiff's property, and the right of sale thereof, under color of law, without prior notice and hearing, denies plaintiff due process and equal

agreed upon between the owner and the lienor, or, if there be no such agreement, in the following manner:

The lienor or pledgee shall give a written notice to the person on whose account the goods are held, and to any other person known by the lienor to claim an interest in the goods. Such notice shall be given by delivery in person or by registered letter addressed to the last-known place of business or abode of the person to be notified. The notice shall contain:

(a) An itemized statement of the lienor's or pledgee's claim, showing the sum due at the time of the notice and the date or dates when it became due;

(b) A brief description of the goods against which the lien or pledge exists;

(c) A demand that the amount of the claim as stated in the notice, and of such further claim as shall accrue, shall be paid on or before a day mentioned, not less than ten days from the delivery of the notice if it is personally delivered, or from the time when the notice should reach its destination, according to the due course of the post, if the notice is sent by mail; and

(d) A statement that unless the claim is paid within the time specified the goods will be advertised for sale and sold by auction at a specified time and place.

In accordance with the terms of a notice so given, a sale of the goods by auction may be had to satisfy any valid claim of the lienor or pledgee for which he has a lien or pledge on the goods. The sale shall be had in the place where the lien or pledge was acquired, or, if such place is manifestly unsuitable for the purpose, at the nearest suitable place. After the time for the payment of the claim specified in the notice to the depositor has elapsed, an advertisement of the sale, describing the goods to be sold, and stating the name of the owner or person on whose account the goods are held and the time and place of the sale, shall be published as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the place where such sale is to be made. The sale shall not be held less than fifteen days from the time of the first publication: Provided, however, that if the property to be sold is of the value of less than five hundred dollars, then it shall not be necessary to advertise the sale in a newspaper as hereinbefore provided, but notice of the sale may be published by posting the same at least ten days before such sale in three conspicuous places therein, one of which places shall be the premises where the property is sold.

From the proceeds of such sale or pledge the lienor or pledgee shall satisfy his lien, including the reasonable charges of notice, advertisement and sale. The balance, if any, of such proceeds shall be held by the lienor or pledgee and delivered on demand to the person to whom he would have been bound to deliver or justified in delivering the goods.

At any time before the goods are so sold any person claiming a right of property or possession therein may pay the lienor or pledgee the amount necessary to satisfy his lien or pledge and to pay the reasonable expenses and liabilities incurred in serving notices and advertising and preparing for the sale up to the time of such payment. The lienor or pledgee shall deliver the goods to the person making such payment, if he is a person entitled to the possession of the goods or payment of charges thereon. Otherwise the lienor or pledgee shall retain possession of the goods according to the terms of the original contract of deposit. (1931 Code, § 38–11–14; 1967, c. 105.)

protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution."

In State ex rel. Payne v. Walden, 190 S.E.2d 770 (W.Va.1972), and in Shaffer v. Holbrook, 346 F.Supp. 762 (D.C.S.D. W.Va.1972), the West Virginia landlord summary distress procedure was invalidated as violative of the due process provisions of the Fourteenth Amendment of the United States Constitution. In those cases the West Virginia Supreme Court of Appeals and the Federal District Court of Three Judges reviewed the history of the distress procedures and recognized the evolution thereof. Both Courts reviewed the recent United States Supreme Court rulings in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The *Sniadach* case invalidated a Wisconsin wage garnishment statute on the ground that a prejudgment sequestration of wages effected without notice or a prior hearing violated the fundamental principles of due process. The *Fuentes* case invalidated Florida and Pennsylvania laws authorizing summary seizure of property under writs of replevin. In Shaffer v. Holbrook, *supra*, at pages 765–766, of. 346 F.Supp., the District Court of Three Judges held:

> It requires only a short step if, indeed, a step at all, to find the West Virginia distress statute violative of procedural due process under the principles of *Sniadach* and *Fuentes*. As pointed out by Mr. Justice Stewart, the procedures under attack in *Fuentes* were offspring of the distress remedy under common law, the forerunner of the West Virginia statute. Indeed, an individual is afforded less protection under the West Virginia statute than those condemned by the Court in *Fuentes*. Both Florida and Pennsylvania required the initiating party to post a bond prior to seizure, while in West Virginia the landlord may proceed solely on the basis of an affidavit. The presence of the justice of the peace in the West Virginia

procedural pattern is a distinction without a difference. When issuing the distress warrant, the justice of the peace is performing a nonjudicial act similar to the Pennsylvania prothonotary, and his magisterial imprimatur on the warrant does nothing to ameliorate the unconstitutional seizure of the property. The complete absence of an opportunity to be heard prior to seizure deprives the West Virginia tenant of his property without due process of law as required by the Fourteenth Amendment, and any post-seizure remedies available to an aggrieved tenant can in no way be a substitute for a prior meaningful hearing. We conclude, therefore, that Chapter 37, Article 6, Section 12 of the West Virginia Code is constitutionally infirm insofar as it denies the tenant an opportunity to be heard prior to seizure of his property. This is not to say, however, that a landlord is irrevocably denied protection against a defaulting tenant. Legislation for that purpose can be enacted and constitutionally implemented if it includes the protections that procedural due process requires under the Fourteenth Amendment.

*A fortiori*, the West Virginia repairman's lien enforcement procedures are less satisfying of due process requirements than were the invalidated landlord's distress procedures. Under the West Virginia statute, Code, § 38–11–14, the repairman already has the lien afflicted personal property in his possession. He is not required to make an affidavit, arrange bond security, or institute an action. He is authorized to give written notice, to advertise, and to sell at auction.

Upon the foregoing findings and conclusions, and in consideration of the entire record in this cause, the Court finds that there remains in this action no genuine issue as to any material fact and that plaintiff is entitled to a judgment as a matter of law. Accordingly, it is

Adjudged, declared and ordered:

1. Plaintiff's motion for summary judgment is granted.

2.   The West Virginia improver's lien statutes, West Virginia Code, §§ 38–11–3 and 38–11–14, in the context of and as applied in this action, are unconstitutional and void under the due process provisions of the Fourteenth Amendment to the United States Constitution.

3.   Defendant shall not rely upon and employ provisions of the invalidated statutes for retention, advertising, and sale of plaintiff's automobile.

4.   Defendant shall return plaintiff's automobile to her or to her agent or representative at the defendant's place of business at Gassaway, Braxton County, West Virginia.

5.   Plaintiff's prayer for injunctive relief is at this time denied since the Court's judgment herein contemplates disposition of this action.   The Court is not unmindful of the six months' retention of plaintiff's automobile and to equities which may arise incident to its maintenance and current operating condition.   Disposition of the action here does not leave the parties without other available remedies and procedures under West Virginia law for resolving issues not now before the Court.