**Elizabeth W. COOK, Plaintiff,**

v.

**Milton O. CARLSON, Defendant.**

**Civ. 73–4042.**

United States District Court,
D. South Dakota, S. D.
Aug. 2, 1973.

Timothy J. Nimick, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., appeared in behalf of plaintiff.

R. G. May, May, Johnson & Burke, Sioux Falls, S. D., appeared in behalf of defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This case centers upon the constitutionality of South Dakota's mechanics' and materialmen's lien statutes, S.D. Comp.L.Ann. 44–9 et seq. (1967). For reasons stated hereafter, I conclude that those statutes are constitutional.

The controversy necessitating resolution of this important and complex issue is rather simple. The plaintiff, Elizabeth W. Cook, is the owner of certain commercial rental property in Sioux Falls, South Dakota, a portion of which property she leases to Management Diversified Services of North Dakota, Inc. (M.D.S.). M.D.S. contracted with the defendant, Milton O. Carlson, for the improvement of that portion of the

premises leased by M.D.S. Plaintiff contends that this contract violates the lease in that her prior written consent was not obtained. It is the contention of the defendant that plaintiff's husband acted as her agent in this matter and that he had authorized the improvements. On April 20, 1973, presumably upon failure of payment, defendant filed a mechanics' and materialmen's lien against the entire premises.

Under the South Dakota statutory scheme, whoever, at the instance of a property owner or his authorized representative, furnishes labor or materials for the alteration or repair of any building shall have a first lien upon the property, cutting off all subsequent purchasers and encumbrancers. S.D.Comp.L. Ann. 44-9-1 (1967). The lien attaches, without the necessity of filing, from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement. S.D. Comp.L.Ann. 44-9-7 (1967). As against a bona fide purchaser, mortgagee or encumbrancer without notice, the lien does not attach prior to the actual and visible beginning of the improvement upon the premises, unless the lienholder files notice of the lien with the county register of deeds, which provides constructive notice to subsequent purchasers and encumbrancers. S.D.Comp. L.Ann. 44-9-8 (1967). The lien terminates unless a statement of the claim is filed with the register of deeds of the county in which the property is situated within 120 days of the completion of the improvements. S.D.Comp.L.Ann. 44-9-15 (1967). The lien also terminates unless an action to enforce is commenced within six years of the completion of the improvement. S.D.Comp.L.Ann. 44-9-24 (1967). The owner may make written demand upon the lienholder at any time, and if the lienholder does not commence a suit to enforce the lien within 30 days, the lien is forfeited. S.D.Comp.L.Ann. 44-9-26 (1967).

The plaintiff challenges this statutorily prescribed procedure on the ground that it affords no notice or opportunity to be heard prior to the attachment of the lien and thereby deprives the plaintiff of her property without due process of law. She prays that the lien be declared void, that the defendant be permanently enjoined from attempting to enforce it, and that the statutory scheme under which it attached be declared unconstitutional. 28 U.S.C. Sec. 1343 provides plaintiff's jurisdictional base, and 42 U.S.C. Sec. 1983 provides her basis in substantive law.

It is a fundamental principle that the " . . . procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Thus, whether or not a prior hearing is required in a given situation is dependent upon a judicial weighing of the seriousness of the deprivation against the importance of the governmental or public interest served by summary procedure. Boddie v. Connecticut, 401 U.S. 371, 378-379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In certain areas, the existence and severity of the deprivation are not questioned. Where an individual is threatened with the deprivation of his liberty, there is no question that an effective prior hearing is required. Argersinger v. Hamlin, 407 U. S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Where an individual is threatened with the deprivation of title to or possession of property, there is no question. Chicago, Burlington and Quincy R.R. Co. v. Chicago, 166 U.S. 226, 17 S. Ct. 581, 41 L.Ed. 979 (1897). Where an individual is completely deprived of the use and enjoyment of that property, there is no question. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The Su-

preme Court has recently held that an individual is entitled to a prior hearing when threated with the loss of a statutory entitlement such as welfare benefits or a driver's license. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). At the frontier are courts which hold that a customer is entitled to a hearing before a utility company can terminate service, Lamb v. Hamblin, 57 F.R.D. 58 (D. Minn. 1972), and that a husband is entitled to a hearing before the issuance of a restraining order keeping him away from his home pending divorce proceedings. Geisinger v. Voss, 352 F.Supp. 104 (E.D. Wis. 1972).

The most recent objects of this weighing process have been summary creditors' remedies. With its decisions in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court of the United States has inspired a massive judicial assault on summary creditors' remedies. Among the casualties have been landlords' lien remedies, Hall v. Garson, 468 F.2d 845 (5th Cir. 1972); MacQueen v. Lambert, 348 F.Supp. 1334 (M.D. Fla. 1972); Gross v. Fox, 349 F.Supp. 1164 (E.D. Pa. 1972), creditors' self-help repossession remedies, Adams v. Egley, 338 F.Supp. 614 (S.D. Cal. 1972), garagemen's lien remedies, Straley v. Gassaway Motor Co., Inc., 359 F.Supp. 902 (U.S.D.C. S.W.Va.1973), Mason v. Garris, 360 F.Supp. 420 (U.S.D.C. N.Ga. 1973), prejudgment real property attachment remedies, Lake Arrowhead Estates, Inc. v. Cumming, 360 F.Supp. 1085 (U.S.D.C. Me. 1973), Idaho First National Bank v. Rogers, 41 U.S.L.W. 2492 (Idaho Dist. Ct., First Jud.Dist., Feb. 21, 1973), and remedies available to municipal and privately-owned utility companies by which they can terminate service without prior hearing, Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir. 1972); Lamb v. Hamblin, 57 F.R.D. 58 (D.

Minn. 1972). Rationale once deemed sufficient to justify these summary remedies have fallen to the superior interest of the individual in a fair and timely process of decisionmaking when the possession of his property is threatened.

But because some rationale have fallen before certain interests does not mean that other rationale must fall before other interests. This court is presented with a challenge to a previously unscathed creditors' remedy—the mechanics' and materialmen's lien. The test against which the validity of the lien must be measured, and possibly the most concise statement of the weighing process referred to above, is set forth in Boddie v. Connecticut, 401 U.S. 371, 378–379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971):

> What the Constitution does require is "an opportunity * * * granted at a meaningful time and in a meaningful manner," "for [a] hearing appropriate to the nature of the case". The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any *significant* property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. In short, "within the limits of practicability," a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause. (citations omitted)(emphasis added).

Whether the mechanics' and materialmen's lien withstands constitutional attack, then, is dependent upon two considerations: (1) whether the deprivation can be classified as "insignificant" or

"de minimis"[1]; and, (2) whether the lien constitutes that "extraordinary situtation . . . that justifies postponing the hearing until after the event."

In the view of this court, the deprivation which results from the filing of a mechanics' lien is de minimis. The creditors' remedies thus far invalidated have completely, though temporarily, deprived the owner of the use of his property. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969) (garnishment "freezes" wages and prevents their use by debtor); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (writ of replevin authorizes sheriff to seize the property, depriving debtor of possession and use); Hall v. Garson, 468 F.2d 845 (5th Cir. 1972) (landlords' lien allows landlord to seize tenants' *personal* property as security for rent payments); Adams v. Egley, 338 F.Supp. 614 (S.D. Cal. 1972) (self-help repossession remedies authorize creditor to peaceably seize collateral upon default in payments); Straley v. Gassaway Motor Co., Inc., 359 F.Supp. 902 (U.S.D.C.S.W. Va. 1973) (garagemen's lien remedies allow repairmen to retain possession of an automobile pending payment or posting of bond by owner); Lake Arrowhead Estates, Inc. v. Cumming, 360 F. Supp. 1085 (U.S.D.C. Me. 1973) (prejudgment real property attachment remedies place the real estate "in custodia legis", in the custody of the court, preventing the transfer or encumbrance of the land). The mechanics' and materialmen's lien, however, neither deprives the owner of the possession nor of the use of his property. Although the use of the property might be said to be curtailed, in that selling the property, borrowing on the property, or renting the property may be more difficult or less profitable, the owner is not legally prevented from selling, encumbering, renting or otherwise dealing with his property as he chooses. Although the value of the property may be diminished due to the existence of the lien, two factors tend to mitigate that harm: (1) while the value of the property may be diminished by the amount of the lien, the improvements, at least theoretically, have increased the value of the property by the amount of the lien, thereby minimizing harm to the owner; and, (2) the owner can force an expeditious adjudication on the merits, without cost to him, by demanding that the lien be foreclosed, whereupon the lienholder must commence foreclosure proceedings within 30 days or forfeit the lien. S.D.Comp.L. Ann. 44–9–26 (1967).

The primary purpose of the mechanics' and materialmen's lien, of course, is to provide construction contractors with security. A secondary purpose, however, is to give notice to subsequent purchasers and encumbrancers that there is a charge on the property and that they will take subject to that charge. In that regard, it is similar to the lis pendens notice. In fact, the statute authorizing lis pendens notice refers to the notice of a mechanic's lien as a substitute for lis pendens notice in the applicable situation. S.D.Comp.L.Ann. 15–10–1 (1967). It is the purpose of lis pendens notice to inform purchasers and encumbrancers that there is pending litigation and that they take the property subject to the result of that litigation. Although the notice incidentally hampers use, it in no way prevents sale, encumbrance or lease of the property. Lis pendens notice exists, at least in part, as a matter of public policy in that it prevents multiplicity of litigation. The requiring of a hearing prior to the filing

---

I. That the threatened deprivation must be of a *significant* property interest before a *prior* hearing is mandated was also stated by Justice Harlan, concurring in Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969): "The 'property' of which petitioner has been deprived is the use of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit. Since this deprivation cannot be characterized as *de minimis*, she must be accorded the usual requisites of procedural due process: notice and prior hearing."

of lis pendens notice would destroy its effectiveness, since it would result in an interim period during which bona fide purchasers and encumbrancers could tie into the property, complicating the process of litigation and disappointing the expectations of the litigants. All of the above could also be said of the mechanics' and materialmen's lien. It is not meant to deprive the owner of possession, but to give interim protection to laborers and materialmen by giving notice of a charge on the property.

The only case I could find which treats the constitutionality of the summary imposition of a lien is Sager v. Burgess, 350 F.Supp. 1310 (E.D. Pa. 1972). A municipal ordinance authorized the summary imposition of a real estate lien upon the owner's failure to pay an assessment for abutting street improvement. Faced with the due process question, a three-judge District Court upheld the ordinance on two grounds:

> We do not construe the procedures adopted by the defendants in causing a lien to be impressed upon abutting properties to be so fundamentally unfair as to constitute a denial of due process. We do not think that the failure to provide a hearing prior to the imposition of the lien violates the due process tenets of the Constitution. Id. at 1313.

> . . . . . .

> In sustaining the constitutional validity of the Municipal Claims Act, this Court also determined that a compelling state interest prevails over that of the individual property owner. Id. at 1313–1314.

> . . . . . .

> If challenges to assessments could be routinely and sporadically made by every affected person it would obviously erode the underpinning of every municipal budget and financial program. Id. at 1314.

The three-judge District Court thus implicitly concluded that the deprivation arising from the imposition of a lien is not such as to invoke the protection of the due process clause.

■ I conclude, also, especially in light of the insignificant nature of the deprivation, that the situation giving rise to the mechanics' and materialmen's lien is an "extraordinary situation" justifying the attachment of the lien as soon as the first materials or labor are furnished. I think this is a case "requiring special protection to a . . . creditor interest", and where the statute is "narrowly drawn to meet . . . such unusual condition." Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969). I think this is a case where "prompt action" is "directly necessary to secure an important government or general public interest." Fuentes v. Shevin, 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). The Court, in Fuentes, outlined these extraordinary situations. In the case of outright seizure of property or discharge from employment, the situation must be "truly unusual." The Court, in Boddie, 401 U.S. at 379 n. 6, 91 S.Ct. 780, refers to the following cases as presenting such unusual situations: Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (government interest in maintaining direct and immediate control over military reservations for national security reasons justifies summary dismissal of on-base civilian employee); Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (public interest requires summary takeover of a bank in danger of failing); Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (economic necessities of wartime require the imposition of rent controls without prior hearing); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (economic necessities of wartime require the imposition of price controls without prior hearing). In the case of attachment, where use of the property is completely curtailed but the owner remains in possession, the

Court, in *Fuentes,* 407 U.S. at 91 n. 23, 92 S.Ct. 1983, referred to the case of Ownbey v. Morgan, 256 U.S. 94, 41 S. Ct. 433, 65 L.Ed. 837 (1920). That case held that an attachment of real property served a most basic and important public interest by securing jurisdiction in a state court. In the case of a mechanics' and materialmen's lien, where use of the property is only incidentally and partially hampered, it is the view of this Court that there exists a basic and important public interest in the summary imposition of the lien. The mechanics' and materialmen's lien originated in the necessity of protecting the construction industry and those in its employ. Labor and materials contractors are in a particularly vulnerable position. Their credit risks are not as diffused as those of other creditors. They extend a bigger block of credit, they have more riding on one transaction, and they have more people vitally dependent upon eventual payment. They have much more to lose in the event of default. There must be some procedure for the interim protection of contractors in this situation. A contractor must have some protection against subsequent bona fide purchasers between the time he completes the work and the time he gets a judgment. Considering their vulnerability, and especially considering their importance to the stability of the American economy, I think there exists sufficient justification for the South Dakota statutory scheme which creates a lien as a matter of law as soon as labor and materials are furnished.

I think it is also evident that the statutes are "narrowly drawn to meet the unusual condition." The lien arises as a matter of law only when labor or materials are furnished to the construction scene. The lien is valid against bona fide purchasers only when improvements are visually evident or when the contractor files a notice of the construction contract with the register of deeds. The extent of the lien is only to the value of the labor or materials thus furnished. A property owner can force an adjudication on the merits within 30 days from the time he makes his demand that the lien be foreclosed. It seems that these narrowly drawn statutory provisions are sufficient to protect the property owner from "substantively unfair or mistaken deprivations of property. . . ." *Fuentes, supra,* 407 U. S. at 81, 92 S.Ct. at 1994.

For the foregoing reasons, I conclude that the South Dakota statutory scheme for the imposition of mechanics' and materialmen's liens exhibits no constitutional infirmity. The plaintiff's complaint is hereby dismissed.