Salvatore and Maria RUOCCO, husband
and wife, Plaintiffs-Intervenors,

v.

Richard P. BRINKER, as Clerk of the
Circuit Court, in and for the Eleventh
Judicial Circuit and all others similarly
situated, Defendants.

No. 73-1607-CIV-CA.

United States District Court,
S. D. Florida.

July 9, 1974.

Alfred Feinberg, Legal Services of
Greater Miami, Miami, Fla., for plain-
tiffs-intervenors.

Gus Efthimiou, Jr., Miami, Fla., for
defendants.

Before DYER, Circuit Judge, and
ATKINS and FAY, District Judges.

### MEMORANDUM OPINION AND ORDER

The issue before this Court is whether
Florida's Mechanics' Lien Law F.S. §§
713.01–713.26, F.S.A., satisfies the req-
uisite standards of procedural due proc-
ess under the Fourteenth Amendment.
Our decision is made with the realiza-
tion that the once ominous spectre of the
*Sniadach* [1]-*Fuentes* [2] doctrine has faded
into the past.[3]

Plaintiffs instituted this action pursu-
ant to 42 U.S.C.A. § 1983 seeking declar-
atory and injunctive relief against the
operation of Florida's Mechanics' Lien
Law. Jurisdiction has been invoked un-
der 28 U.S.C. § 1343(3) and 28 U.S.C.
§§ 2201 and 2202. A Three-Judge Court
properly has been convened pursuant to
28 U.S.C. §§ 2281 and 2284.

Plaintiffs, Salvatore and Maria Ruoc-
co, are homeowners residing in Dade
County, Florida. On May 7, 1973 the
defendant, Brinker, as Clerk of the Cir-
cuit Court in and for the Eleventh Judi-
cial Circuit entered and recorded a
Claim of Lien filed by Raymond Swier,
agent for the lienor, All Seasons Air
Conditioning Corporation, for "fur-

1. Sniadach v. Family Finance Corp. of Bay
   View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.
   2d 349 (1969).

2. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct.
   1983, 32 L.Ed.2d 556 (1972).

3. *See* Mitchell v. W. T. Grant Co., 416 U.S.
   600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

nished labor, services or materials consisting of . . . preparation of ductwork, plans, engineering, etc." The claim of lien is in the amount of $416.-00.

## I

Plaintiffs have sought to certify this case as a bilateral class action pursuant to F.R.Civ.P. 23 and Local Rule 19. The proposed class of plaintiffs consists of all real property owners in the State of Florida whose real property has or may be encumbered by a Claim of Lien under the Mechanics' Lien Law of Florida. This class is sought under F.R.Civ.P. 23(a) and (b)(2).

The proposed class of defendants consists of all clerks of the judicial circuits in the State of Florida. Certification of this class is sought under F.R.Civ.P. 23(a) and (b)(1)(A).

With respect to both proposed classes the Court finds that each is so numerous that joinder of all members is impracticable; that there are questions of law and fact common to each class; that the claims and defenses of the representative parties are typical of the claims and defenses of both classes; and that the representative parties will fairly and adequately protect the interests of the classes.

Moreover, the Court concludes with respect to the proposed class of plaintiffs that the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Furthermore, the Court finds that the prosecution of separate actions against individual members of the proposed class of defendants would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

In light of the foregoing, it is appropriate that this cause proceed as a bilateral class action. Plaintiffs' motion for certification, then, is granted.

## II

This cause is before the Court on cross motions for summary judgment. Upon consideration of the record in this case which reflects that no genuine issue as to any material fact exists, the Court will proceed to the merits.

The issue as first presented to this Court was whether the Florida Mechanics' Lien statutory scheme was fatally defective because it did not provide an opportunity for a hearing prior to the filing, or imposition, of a claim of lien. As will be shown, the issue to be resolved cannot be so delimited. Rather, the issue before the Court is whether Florida's Mechanics' Lien Law comports with traditional standards of procedural due process under the Fourteenth Amendment.

Under Florida's Mechanics' Lien Law every lienor except a lienor contracting directly with the owner or through his agent as against the owner, must record a claim of lien to perfect his lien. *See* Foley Lumber Co. v. Koester, 61 So.2d 634 (Fla.1952).

A claim of lien may be recorded with the Clerk of the County Court at any time during the progress of the work but not later than ninety days after the final furnishing of the labor, services, or materials by the lienor.[4]

A claim of lien must set forth the following:[5] (1) the person on whom and the address where notices or process may be served; (2) the name of the person with whom the lienor contracted or by whom he was employed; (3) a description of the labor, services, or materials furnished and the contract price thereof; (4) a description of the real property sufficient for identification; (5) the name of the owner; (6) the time when the first and the last item of

---

4. F.S. § 713.08(5), F.S.A.

5. F.S. § 713.08, F.S.A.

labor or service or materials was furnished; and (7) if the lien is claimed by a person not in privity with the owner, the date and method of service of the notice to the owner.[6] Moreover, the claim of lien must be signed and verified on personal oath by the lienor, his agent or attorney. The individual must be acquainted with the facts stated in it.[7]

After a claim of lien is recorded, a copy must be served on the owner in the manner set forth in F.S. § 713.18, F.S. A.[8]

The Florida statutes provide that a mechanics' or materialman's lien may be discharged in a number of ways. A lien may be discharged by failure to enforce the lien within one year.[9] Also, any interested person may institute a proceeding in which the lienor is required to show cause why his lien should not be enforced by action or vacated and cancelled of record.[10] The return time on the rule to show cause is twenty days. The owner can also file a notice of contest of lien which requires the lienor to bring suit within sixty days.[11]

The filing of a claim of lien is an integral step in the perfection of a mechanics' lien. Liens for professional services and liens for performing services or furnishing materials for subdivision improvements (making real property suitable as the site of an improvement) attach and take priority at the time the claim of lien is recorded. All other mechanics' liens (laborers, contractors, and subcontractors in privity [12] or not in privity with the owner [13]) attach and take priority as of the time of notice of commencement which must be filed by the owner.[14] If a notice of commencement is not recorded, the liens attach and take priority at the time the claim of lien is recorded.[15]

In attacking this statutory scheme, the plaintiffs rely chiefly on the pronouncements in Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The plaintiffs maintain that the filing of a claim of lien, which places a cloud or encumbrance upon their property, without a prior opportunity to be heard impedes their ability to freely alienate their property or otherwise use that property for loan security. This, the plaintiffs argue, violates essential notions of procedural due process.

The defendant on the other hand urges this Court to adopt the rationale of two recent opinions which have upheld the mechanics' lien laws of South Dakota and Arizona. Cook v. Carlson, 364 F.Supp. 24 (S.D.S.D.1973); Spielman-Fond, Inc. v. Hansons, Inc., 379 F. Supp. 997 (D.Ariz.1973), aff'd 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).

6. As a prerequisite to perfecting a lien and recording a claim of lien, all lienors, except laborers, who are not in privity with the owner, must serve a notice on the owner setting forth the lienor's name and address, a description of the real property sufficient for identification, and the nature of the services or materials furnished or to be furnished. F.S. § 713.06(2)(a), F.S.A. This notice must be served before commencing or not later than forty-five days from commencing to furnish services or materials but in any event before the date of furnishing the affidavit under subsection (3)(d), cl. 1 of this section (affidavit of payment or nonpayment required before suit may be instituted), or abandonment, whichever shall occur first. *Id.*

7. F.S. § 713.08(2), F.S.A.

8. Failure to serve any claim of lien in the prescribed manner within ten days after recording renders the claim of lien voidable to the extent that such failure or delay is shown to have been prejudicial to any person entitled to rely on it. F.S. § 713.-08(4)(c), F.S.A.

9. F.S. § 713.21(3), F.S.A.

10. F.S. § 713.21(4), F.S.A.

11. F.S. § 713.22, F.S.A.

12. F.S. § 713.05, F.S.A. and F.S. § 713.-07(2), F.S.A.

13. F.S. § 713.06(1), F.S.A.

14. F.S. § 713.13, F.S.A.

15. F.S. § 713.07(2), F.S.A.

■ We conclude that Florida's Mechanics' Lien Law does satisfy the requisite standards of procedural due process. Subsequent to oral argument in this case, however, the Supreme Court rendered its decision in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). That decision compels a re-evaluation of the rationale of Cook v. Carlson, *supra* and *Spielman-Fond, supra,* in particular, and the applicable standards of procedural due process in general.

In *Sniadach, supra,* the Court held that Wisconsin's garnishment procedure in which creditors could, without the opportunity for a prior hearing, effectively freeze one-half the wages due an alleged debtor, violated fundamental principles of due process.

Justice Harlan, concurring, elaborated on the premises underlying the holding:

"The 'property' of which petitioner has been deprived is the *use* of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit. Since this deprivation cannot be characterized as *de minimis,* she must be accorded the usual requisites of procedural due process: notice and a prior hearing . . . .

Apart from special situations . . . I think that due process is afforded only by kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property or its unrestricted use. I think this is the thrust of the past cases in this Court." 395 U.S. at 342–343, 89 S.Ct. at 1823 (citations omitted).

Three years later the Court, in a 4–3 decision, adopted Justice Harlan's reasoning in striking down the replevin laws of Florida and Pennsylvania.

*Fuentes, supra.* Under the replevin laws of both states a creditor could obtain from a court clerk a writ of replevin by posting a bond and filling out appropriate forms for submission to the clerk. Under the Florida law anyone whose goods or chattels were "wrongfully detained" could obtain a writ. There was no requirement that an applicant make a convincing showing that the goods were "wrongfully" detained. In fact an applicant merely had to recite in a conclusory fashion that he was "lawfully entitled to possession." Under the Pennsylvania law, a creditor was not even required to formally allege that he was lawfully entitled to the property. A creditor merely had to file an affidavit of the value of the property to be replevied.

In order to obtain the writ, a creditor had to file a security bond. Under the replevin schemes the buyer could regain possession of the property by posting a counter-bond.

Under the Florida law the debtor would "eventually" have an opportunity for a hearing, as the defendant in a trial of the court action for repossession which the creditor was required to pursue. The Pennsylvania law did not require that there ever be an opportunity for a hearing on the conflicting claims of possession. The debtor was required to initiate a lawsuit to regain the property.

Under this factual umbrella the Court held that the "Florida and Pennsylvania prejudgment replevin provisions work[ed] a deprivation of property without due process of law insofar as they den[ied] the right to a prior opportunity to be heard before chattels [were] taken from their possessor." [16] Although the Court characterized the holding as a "narrow one" [17] it was clear that the opinion marked a sweeping change in the concept of procedural due process vis-a-vis creditors' rights.[18]

16. 407 U.S. at 96, 92 S.Ct. at 2002.

17. *Id.*

18. The attitude of the Court was apparent from its rejection of the contention that only "necessities of life" were entitled to due process protection. 407 U.S. at 88–90, 92

**436**

Despite the pronouncements in *Sniadach* and *Fuentes*, two courts have upheld mechanics' lien laws similar to those attacked *sub judice*. In *Spielman-Fond, supra*, a Three-Judge Court distinguished *Fuentes* asserting that the Arizona materialmen's statutes involved no actual dispossession of property.[19] The court also rejected the argument that by restricting the right to alienate property the lien statutes deprived the owners of a significant property interest. The court noted that the liens did "nothing more than impinge upon economic interests of the property owner." Similarly, in Cook v. Carlson, *supra*, Judge Nichol concluded that the deprivation of property rights under the South Dakota materialmen's lien statutes could be classified as "de minimis."[20] The

procedural safeguards of the statute, which did not include a prior hearing, were deemed adequate.

If we were compelled to pigeonhole our analysis into the guidelines set forth in *Fuentes*, we would be content to rest our decision on the conclusion reached in *Spielman-Fond* and Cook v. Carlson, to wit, that the infringement on property rights created by the mechanics' lien laws is *de minimis*. But we are not so compelled.

In Mitchell v. W. T. Grant Co., *supra*, the Supreme Court overruled *Fuentes* to the extent that *Fuentes* required a hearing prior to the deprivation of any significant property interest without regard to the weight of the interests deprived or the length of such deprivation.[21]

S.Ct. at 1983. Reflecting the views of Justice Harlan in *Sniadach*, the Court stated:

"The relative weight of liberty or property interests is relevant, of course, to the form of notice and hearing required by due process. . . . But *some* form of notice and hearing—formal or informal—is required before deprivation of a property interest that 'cannot be characterized as *de minimis*.'" 407 U.S. at 90.

n. 21, 92 S.Ct. at 1999 (citations omitted). The impact of the decision was real and immediate. Numerous creditors' remedies were subsequently invalidated. *See, e. g.*, Hall v. Garson, 468 F.2d 845 (5th Cir. 1972); Barber v. Rader, 350 F.Supp. 183 (S.D.Fla. 1972) (3 Judge Court); MacQueen v. Lambert, 348 F.Supp. 1334 (M.D.Fla.1972) (landlord summary remedies); Mason v. Garris, 360 F.Supp. 420 (N.D.Ga.1973) (3 Judge Court); Straley v. Gassaway Motor Co., Inc., 359 F.Supp. 902 (S.D.W.Va.1973) (garagemen's lien remedies); Bay State Harness Horse Racing and Breeding Ass'n., Inc. v. PPG Industries, Inc., 365 F.Supp. 1299 (D.Mass.1973) (3 Judge Court); Gunter v. Merchants Warren National Bank, 360 F.Supp. 1085 (D.Me.1973) (3 Judge Court) (prejudgment attachment statutes).

19. Adoption of this rationale has not been uniform. *Compare*, Bay State Harness Horse Racing and Breeding Ass'n, Inc. v. PPG Industries, Inc., 365 F.Supp. 1299 (D. Mass.1973) (3 Judge Court) and Gunter v. Merchants Warren National Bank, 360 F. Supp. 1085 (D.Me.1973) (3 Judge Court) *with* Ross v. Brown Title Corp., 356 F.Supp. 595 (E.D.La.1973) (3 Judge Court) aff'd. 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394.

20. Judge Nichol also determined that the transactions between an owner and materialman constituted an extraordinary situation that justified postponing the hearing until after the imposition of the lien. *See* Fuentes v. Shevin, 407 U.S. 67, 90–93, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972). We need not concern ourselves with the validity of that determination. *Compare* Gunter v. Merchants Warren National Bank, 360 F. Supp. 1085, 1090–1091 (D.Me.1973) (3 Judge Court).

21. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) Mr. Justice Powell concurring at 623, 94 S.Ct. at 1908. Of course, the opinion in *Mitchell* may be said to be delimited to the extent that resolution of the procedural due process issue is made in a context in which both parties had a property interest in the disputed items. *See* Mitchell v. W. T. Grant Co., 416 U.S. 600, at 605–607, 94 S.Ct. 1895, 1899, 40 L.Ed.2d 406 (1974). The theory behind the Mechanics' Lien Law places the case *sub judice* in the same context, however.

"Mechanics' lien laws 'find sanction in the dictates of natural justice' and in the equitable principle that 'every one who, by his labor or materials, has contributed to the preservation or enhancement of the property of another, thereby acquires a right to compensation.'" Greenblatt v. Goldin, 94 So.2d 355 (Fla.1957), quoting from Jones v. Great Southern Fireproof Hotel Co., 86 F. 370, 385 (6th Cir. 1898).

We are not persuaded, however, that the effect of *Mitchell* on standards of procedural due process will be so limited.

On one level, *Fuentes* was distinguished on its facts. At issue in *Mitchell* was the validity of the Louisiana summary writ of sequestration which was obtainable on the creditor's *ex parte* application without prior notice to the debtor or prior opportunity to be heard. The statute provided that the writ would issue upon the filing of a verified affidavit and upon the authority of a judge after the creditor had filed a sufficient bond. The debtor could seek immediate dissolution of the writ.

In finding that the statutory framework "effect[ed] a constitutional accommodation of the conflicting interests of the parties" [22] the Court noted that the statutes under consideration in *Fuentes* differed materially from the Louisiana statute. Under Louisiana law the writ could only issue when the nature and amount of the claim and the grounds relied upon for issuance of the writ clearly appeared from specific facts shown by verified petition or affidavit. The facts relevant to obtaining a writ were narrowly confined—no "fault standard" existed as it did in *Fuentes*.[23] The writ would issue only upon authorization of a judge. Furthermore, Louisiana law provided for an immediate hearing and dissolution of the writ unless the creditor could substantiate his claim. Also, to obtain a writ, a creditor had to post a bond sufficient to protect the vendee against damages if it were later shown that the writ was improvidently issued.

The more significant import of the *Mitchell* decision is its reaffirmation of a flexible procedural due process analysis. *See* Ewing v. Mytinger and Casseberry, 339 U.S. 594, 599, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). Referring to the pre-*Sniadach* cases the Court stated:

". . . they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full and immediate post-termination hearing is provided. The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" *Mitchell, supra* 416 U.S. at 611, 94 S.Ct. at 1902, quoting from Phillips v. Commissioner, 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

There may be instances when the deprivation of property is so severe and the post-deprivation safeguards are so inadequate that a prior opportunity to be heard is necessary. This is not one of those instances. We find the format of the claim of lien with the detailed inquiries therein and the variety of post-imposition hearings set forth in Florida's Mechanics' Lien Law sufficient to satisfy procedural due process. Moreover, we reject the contentions set forth in plaintiffs' supplemental memorandum that because the procedure under Florida's Mechanics' Lien Law differs from that upheld in *Mitchell*,[24] it is violative of due process. Such deviation might well be deemed fatal if the statutory scheme provided for actual dispossession of realty or personalty. No such dispossession occurs here. *See* Ross v. Brown Title Corp., 356 F.Supp. 595 (E.D.La. 1973) (3 Judge Court), *aff'd*, 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394. We conclude, then, that Florida's attempt to accommodate the rights and interests of the materialman, laborer and owner passes constitutional muster.

**22.** Mitchell v. W. T. Grant Co., 416 U.S. 600, 607, 94 S.Ct. 1895, 1899, 40 L.Ed.2d 406 (1974).

**23.** Sequestration would lie only to prevent the encumbrance, alienation or other dispotion of the property during the pendency of the proceedings. *Id.* at 605–607, 94 S.Ct. at 1899.

**24.** Plaintiffs point out that under the statute in question, the Clerk of the Court files the claim of lien; no bond is required of the lienor; and the creditor is not required to immediately institute suit. The latter distinction is not well made. *See* F.S. §§ 713.-21(3) and 713.22, F.S.A.