[No. 4927.  Decided September 21, 1904.]

CLIFFORD D. BEEBE *et al., Respondents,* v. JOHN C. REDWARD *et al., Appellants.*[1]

EVIDENCE—PAYMENT—RECEIPTS—SUFFICIENCY OF OBJECTIONS. An objection to the admission in evidence of receipts signed by judgment creditors acknowledging payment of their judgments, on the ground that such receipts did not show payment, is not sufficient to raise the point that there was no proof of execution or authentication, and the same will not be considered on appeal.

SAME—WRITINGS—INSPECTION AND COPY BEFORE TRIAL. The failure to offer an inspection and serve a copy of a writing, before trial, is not a valid objection to the writing as evidence, under Bal. Code, § 6048, since that section merely provides that such inspection and copy shall dispense with proof of execution and genuineness in case it is not denied by affidavit.

INDEMNITY—BUILDING CONTRACT—ACTION ON BOND—ACCRUAL—LIMITATIONS—DATE OF FIRST BREACH—DELAY IN COMPLETION OF BUILDING—BREACH WAIVED BY OWNER. Where an indemnity bond guaranteeing a building contract provided that actions thereon must be instituted within six months after the first breach of the contract, which called for the completion of the building in August, 1901, and the owner accepted the building upon its completion in December, 1901, the company cannot claim that the right of action accrued in August and was barred six months thereafter, since the owner waived that breach by accepting the building, and the surety cannot complain of the waiver of any breach of the contract or departure therefrom that does not operate to its prejudice.

SAME—MECHANICS' LIENS AS BREACH OF CONTRACT—WAIVER BY OWNER. Where an indemnity bond guarantees the performance

[1]Reported in 77 Pac. 1052.

of a building contract in which the contractor agrees to furnish
all the material, the owner is not obliged to treat the filing of
a mechanics' lien as a breach of the contract, and assume the
burden of establishing the lien; but he may waive the same until
it is established by a court of competent jurisdiction, in which
case his right of action on the bond accrues at that time, and an
action begun within the six months limited in the bond after the
first lien is established by judgment is in time.

Appeal from a judgment of the superior court for King
county, Bell, J., entered April 27, 1903, upon the verdict
of a jury rendered in favor of the plaintiffs in an action
upon an indemnity bond guaranteeing a building contract.
Affirmed.

*James B. Murphy,* for appellant U. S. Fidelity & Guaranty Co.

*E. H. Guie,* for appellants Redward.

*H. R. Clise,* for respondents.

FULLERTON, C. J.—On May 24, 1901, the respondent
Clifford D. Beebe entered into a contract with the appellant John C. Redward, by the terms of which Redward
undertook to furnish all the necessary labor and materials
and erect for the respondent a building, according to plans
and specifications referred to in the contract, for the agreed
price of $25,022.    Shortly after the execution of the contract, the appellant Redward, as principal, and his co-
appellant The United States Fidelity and Guaranty Company, as surety, executed and delivered to the respondent
a bond in the sum of six thousand dollars, conditioned,
among other things, that the contractor would well, truly,
and faithfully comply with all the terms, covenants, and
conditions of the contract on his part to be kept and per-
formed according to its tenor and effect.    After the execu-
tion of the contract and bond, Redward entered upon the
work of constructing the building, substantially complet-

ing it about December 1, 1901, some three months later than the time fixed in the contract for its completion. On the date last named, N. Clark & Sons filed a lien on the building, to secure themselves for materials sold the contractor, and used in the construction of the building. Later on, two certain other liens were filed, one by the Robinson Manufacturing Company, and the other by the Seattle Lumber Copmany, each claiming balances due from Redward for materials furnished him for use in the construction of the building.

Foreclosure actions were thereafter begun on the several liens, against which the respondents and the appellants Redward unsuccessfully defended, the several claimants recovering judgment of foreclosure against the property, for the amount claimed by them, with costs of suit and attorney's fees added, which judgments the respondents paid in full. The judgment in favor of N. Clark & Sons was for the sum of $1,840.89, was entered June 30, 1902, and was paid on July 2, 1902. The judgment in favor of the Robinson Manufacturing Company was for the sum of $1,150, was entered on the 6th of November, 1902, and was paid on December 5, 1902. The judgment in favor of the Seattle Lumber Company was for the sum of $1,038.38, was entered on the 8th of October, 1902, and was paid December 10, 1902. In addition to these sums, the respondents paid in each case the statutory appearance fee of $2.00, and $50 to the attorneys employed by them to defend the actions. At the time of the filing of the first lien, the respondents had paid to the contractor all of the original contract price, except the sum of $280. There was, however, an amount owing for extra work and material. This amount was in dispute between the respondents and the contractor, but it was conceded by the respondents that the amount aggregated at least $663.50.

This action was begun on December 16, 1902. In their complaint the respondents alleged that there was due them, by reason of the matters above set forth, the sum of $3,270.19, being the difference between the amount paid on account of the construction of the building and the contract price plus the value of the conceded extras. To the complaint the appellants answered separately. They put in issue the rendition and payment of the lien judgments set out in the complaint, and set up several affirmative defenses. One of those set up by the appellants Redward, was the claim that the contractor Redward had performed extra labor upon, and furnished extra material used in, the construction of the building, to an amount aggregating $1,676.50, which had not been paid or allowed to him by the respondents. The other appellant set up the same defense, contending however, that the reasonable value of the extra work and material put on the building by the contractor more than exceeded the difference between the contract price and the amount actually paid to his account, and the further defense that the action had not been begun within the time prescribed by the terms of the bond. Replies were filed, putting in issue the new matter of the answers, and a trial had before the court and a jury, resulting in a verdict and judgment in favor of the respondents for the sum of $2,812.75 and the costs of the action.

The appellants Redward first assign that the court erred in refusing to grant their motion for nonsuit, made at the close of the plaintiffs' case. The motion was based on the ground that the respondents had failed to prove payment by them of the judgments obtained by the lien claimants. The proofs on this point consisted of a transcript of the judgment roll, showing the commencement and prosecution of the several actions, the judgments entered therein, and

a signed receipt from each of the judgment creditors ac-
knowledging payment to them of the amounts of their re-
spective judgments.    It is objected that these receipts were
incompetent to prove payment, because no proof was made
of their authenticity or execution, and that they were not,
before the trial, submitted to the apppellants for inspec-
tion, nor were the appellants, before the trial, served with
a copy of the instruments or with notice that the respond-
ents intended to read them in evidence, as required by the
statute.    But the receipts were objected to in the court
below because they did not show payment, and not on the
grounds here suggested, and we think the appellants cannot
now urge these objections.    By failing to object on the
ground that the instruments were not duly authenticated,
or shown to have been executed by the judgment creditors,
the appellants admitted their genuineness, and they were
properly admitted in evidence if competent for any pur-
pose.

So, likewise, the failure to object on the ground that the
writings were not submitted to inspection before the trial
is a waiver of that objection.    This objection is also un-
sound for the reason that the statute cited (§ 6048 Bal.
Code) does not make it necessary that a writing, material
as evidence, be offered to the other party for inspection and
be served on him by copy prior to the trial, before it can be
admitted in evidence.    This section of the statute was in-
tended to enable a party to ascertain, in advance of the
trial, whether or not it will be necessary for him to prove
the genuineness of his written evidence at the trial.    If he
offers the writings for the inspection of the other party,
and delivers him a copy thereof, with notice that he intends
to read the same in evidence at the trial, they may be so
read without proof of their genuineness or execution, un-

less the other party, before the commencement of the trial, denies their genuineness by affidavit; but the statute was intended to afford an additional remedy; it was not intended as a denial of the right to put in evidence a writing in the manner prescribed by the general rules of evidence. It was proper, therefore, for the plaintiffs to offer these writings in evidence at the trial in the manner they did offer them, and the court did not err in admitting them over the objections urged. It may be well to say here, however, that we do not intend to assert that a receipt, acknowledging payment of money, is generally admissible as evidence of such payment as against strangers thereto; as to them, of course, it is but the hearsay declaration of the party who signed it. But where a receipt is admitted in evidence against such a stranger, without objection on that ground, it is, like other hearsay evidence so admitted, sufficient to support a finding based thereon. The motion for nonsuit was properly denied.

The next contention of these appellants is that the verdict of the jury, disallowing certain extras claimed by them, is not supported by the evidence. The appellants, as we have stated, claimed extras to the amount of $1,676.50. The respondents, in part in their pleadings, and in part at the time of the trial, admitted of this claim the sum of $827.50. The jury found that the appellants were entitled to something over two hundred dollars more than the amount admitted, but did not allow the full amount of the claim. The contention is that the full amount claimed should have been allowed, and that the verdict should be set aside because the jury did not so find. But while there was, doubtless, evidence sufficient to sustain the finding of the jury had they found for the appellants for the full amount claimed, the evidence was not of a conclusive

nature; neither was it undisputed. It was, therefore, for the jury to find whether the claims were supported as a whole, or in part only, and, as they found the claims supported only in part, the finding is binding upon this court.

Passing to the assignments of error made by the appellant The United States Fidelity and Guaranty Company, we will notice first the contention that the action was not begun within the time fixed by the bond. The bond provided among other things "that any suits at law or proceedings in equity brought against this bond, to recover any claim hereunder, must be instituted within six months after the first breach of said contract." It is first contended that there was a breach of this provision of the bond in that the appellant Redward failed to complete the building before December 1, 1901, whereas the contract called for its completion on August 31, 1901; and, second, if there was not a breach because of this, there was such a breach when the appellant Redward suffered materialmen, furnishing material used in the construction of this building, to file liens thereon to secure payment for the material so furnished, and that, as one such lien was filed as early as December, 1901, the action, to have been in time, should have been commenced not later than six months from that date.

Concerning the first of these contentions, if it were true that there was a breach of the contract in the respect mentioned, it could not, in this action, be availed of by the appellants. The respondents make no complaint of this breach. They have accepted completion of the building on December 1, 1901, as performance of the contract, and cannot now claim a default because of the delay even though they were injured by it. The bond was given for the benefit of the respondents. Its purpose was to secure to them the

faithful performance of the contract on the part of the contractor, and whatever they choose to accept as performance, is performance, as between themselves, on the one side, and the contractor and surety on the other. The surety, therefore, cannot complain of any breach of the contract which the owner waives, that does not operate to his prejudice. If the breach increases his liability, or causes him a loss in any manner, he can, of course, defend against such increased liability, and recoup such losses, and it may be that breaches of the contract having this effect would relieve him from his liability entirely, but he cannot escape liability by the mere showing that there has been a departure, in the performance, from the strict terms of the contract. To relieve on this ground there must be a showing, not only of departure from the terms of the contract, but that the position of the surety has been so changed thereby as to result in prejudice to him. In the case at bar there is no showing that the surety has been prejudiced by the failure to complete the building at the time stipulated in the contract, and, as the owners, for whose benefit the stipulation was inserted, make no complaint because thereof, the surety cannot plead it as a bar to the right of the owners to recover for subsequent losses.

What we have said has been on the assumption that a breach of the contract, in the regard mentioned, has been shown by the proofs, but we think it may be questioned whether enough was proven to show a breach of the contract. It was made to appear that the time fixed in the contract for the completion of the building was August 31, 1901, and that the building was not completed until November, 30, 1901; but the obligation of the contractor to complete on the day named was subject to several contingencies expressly enumerated in the contract, and it was

not shown that these contingencies did not happen. It would seem that it would be necessary to show that none of the conditions happened which would authorize the delay, before it could be said that the delay constituted a breach.

Concerning the second contention, we have held in another case that, where an owner let a contract for the erection of a building, by the terms of which the contractor undertook to furnish all the labor and material required for its construction, and gave a bond with sureties for the faithful performance of the contract, the owner might treat the filing of a lien on the property by a materialman as a breach of the covenants of the bond, and sue at once thereon. But we said he was not obligated to do so; that, by so doing, he took upon himself the burden of establishing, not only the technical sufficiency of the lien to create a charge upon his property, but the amount due thereon, as well; whereas, he could properly wait until the parties, who had personal knowledge of the facts, litigated these questions between themselves, and the sufficiency of the lien and the amount thereof became settled by the judgment of a court of competent jurisdiction, and could treat the rendition of the judgment as the breach of the covenant of the bond. The question last suggested was not strictly before the court in the case referred to, but it seems to us now, after further consideration, that the conclusion was a just one. There may seem to be, as a first impression, some inconsistency in saying that the same act may, or may not, be a breach of a written covenant, as the party affected wills it, but the explanation rests in the fact that the owner may waive such breaches of the covenants of the contract on the part of the contractor as he chooses. A mechanic's or materialman's lien, although duly executed and recorded, does not prove itself. It is, at most, only a tenta-

tive charge against the property it purports to bind, and is liable to be defeated for lack of technical sufficiency, as well as by showing that the indebtedness, or some considerable part thereof, is not owing. The owner may, therefore, waive the apparent breach of the contract caused by the mere filing of the lien, and insist that a covenant such as the one now before us is broken only when the lien is made a fixed and determinate charge against his property, by the judgment of a court of competent jurisdiction. The present action was begun within six months after the time the earliest of the liens here in question was put into judgment, and we hold it to have been commenced in time to comply with the terms of the bond.

In the course of the trial the appellant sought to show other acts which it claimed to be breaches of the contract on the part of the contractor, but against which the owner made no complaint, either against the contractor or the surety. It was denied the right, and complains of such denial. What we said above applies here. The surety cannot insist that anything constitutes a breach which the owner does not insist upon, unless he shows that the breach operated in some manner to his prejudice. As to the matters here complained of, there is no pretense that they operated in any manner to the prejudice of the surety, and hence they cannot avail it as a defense.

There is no error in the record, and the judgment will stand affirmed.

MOUNT, DUNBAR, and ANDERS, JJ., concur.