**HARTFORD ACCIDENT AND INDEM-NITY COMPANY, a Corporation, Plaintiff in Error,**

**v.**

**Glenn L. ORR, Defendant in Error.**

**No. 37483.**

Supreme Court of Oklahoma.

June 25, 1957.

Rehearing Denied Jan. 28, 1958.

**374**

Fenton & Fenton, Oklahoma City, for plaintiff in error.

W. G. Paul, T. R. Benedum, Norman, for defendant in error.

BLACKBIRD, Justice.

This appeal involves liability under a bond which a contractor named Karl K. Adams of Shawnee, Oklahoma, d/b/a Adams Plumbing, or Plumbing & Heating, Company, furnished to assure his faithful performance of a contract to construct an automobile service station in Norman, Oklahoma, for said City's Glenn L. Orr, who appears herein as defendant in error. The bond was issued to Adams by one Jerry Casey, plaintiff in error's Shawnee, Oklahoma, agent, after his wife, as one of said company's attorneys-in-fact had executed it for said company, as surety. Adams was the Principal and Orr, the obligee, named in the bond. It appears that Orr had originally promised the construction contract to one Russel F. Henry, who was living in Norman at the time; but, when it was discovered that Henry could not obtain a performance bond, the contract was entered into with Adams, who, previous to September 20, 1954, the date of both the contract and bond, had agreed to become associated with Henry. This agreement between the two was evidenced by a writing entitled "Joint Venture Agreement", dated September 16, 1954, drawn by the bonding company's Shawnee agent, Casey, and signed by both men. The agreement recited that Adam's and Orr's purpose in entering into it was to bid on and perform "contracts as joint venturers under the name of General Construction Company", and it provided that each would have a 50% interest in said "joint venture * * or any work in connection therewith * * *".

As the work on the Norman service station progressed, Orr paid the price specified for its construction in the above-mentioned contract, in three separate installments. All of these payments were made by checks payable to "General Contracting Company (Karl K. Adams and Russel F. Henry)." Orr issued and delivered the last of these checks on February 4, 1955, after construction of the station had been completed and he had received a letter from Adams, dated February 3, 1955, stating: "This is to certi-

fy that all material and labor incurred in the construction of * * * (the) building, have been paid in full, as of this date," and an instrument entitled "Waiver Of Lien" executed by both Adams and Henry, in which, among other things, it was stated: "We * * * certify that all claims for labor, materials and machinery rentals and any other claims and demands that may be the basis of liens against the * * * property have been paid in full."

Notwithstanding the foregoing assurances, the G & M Woodworking Shop, who claimed to have furnished some of the labor and materials that went into construction of the station, filed a labor and materialman's lien therefor against the property, on February 23, 1955, alleging a balance due it of more than $1,000. During the ensuing month, other such liens were filed against the property; and, on March 9, 1955, one of these lien claimants, Jess Waters, d/b/a Waters Electric Company, commenced the present action to foreclose his lien. By March 17th of that year, two other such lien claimants had filed answers and cross petitions seeking foreclosure of their liens in the same action. Almost ten days thereafter, or on March 25th, the attorney who appears herein for Mr. Orr, addressed a registered letter to the bonding company, calling its attention to the fact that it had executed Adams' performance bond as surety; stating, among other things, that Adams had defaulted in payment of the bills incurred in the station's construction; and calling upon said surety to fulfill its duty, under the provisions of the bond, by taking "immediate steps to discharge or see that your Principal discharges all of his unpaid obligations covered by" the bond. When no reply was received to said letter, Orr obtained an order of court in the aforesaid lien foreclosure action, making additional parties defendant thereto, both Adams, d/b/a Adams Plumbing & Heating Company, and said surety on Adams' bond. Subsequently, after other lien claimants had filed pleadings, setting up their lien claims therein, and said action had been consolidated with another such action, the court,

in the consolidated case, rendered its judgment on December 5, 1955, granting said lien claimants money recoveries on their claims, totalling more than $3,000, plus a further sum totalling more than $900 as said lien claimants' attorneys fees, against both "Karl K. Adams and R. F. Henry, partners doing business as General Construction Company otherwise known as General Contracting Company and Karl K. Adams, a sole trader doing business as Adams Plumbing Company", and establishing said claims as valid liens against Orr's service station property.

The cause thereafter went to trial upon the issues (with which we are concerned herein) between Orr and the bonding company. At the close of said trial, the court rendered judgment in Orr's favor against the bonding company for the principal sum of $3,627 with interest, which principal sum, according to the journal entry of said judgment, represented "the unpaid balances wi. `1 interest to date on the judgments rendered herein against Karl K. Adams, d/b/a Adams Plumbing & Heating Company, on December 5, 1955 * * *". The judgment also granted Orr recovery of the additional sum of $942.50, as the total of the attorneys fees for which the lien claimants had been granted recovery against Adams by the December 5th judgment. The judgment here involved also granted Orr recovery of the additional sum of $750 as his attorneys fees for defending himself in the lien-foreclosure phase of the action, and for prosecuting his own claim against the bonding company. The judgment was based upon certain findings of fact and conclusions of law pertinent to the issues argued in the bonding company's present appeal therefrom. These will hereinafter be mentioned in connection with said company's argument. As it and Orr appear herein as appellant and appellee, respectively, we will hereinafter refer to them as such.

The first, of the three propositions appellant urges to show error in the trial court's determination of its liability as surety on the performance bond furnished Adams, pursuant to his construction contract with

appellee, involves a provision of said bond therein made a condition of said company's liability thereon to appellee Orr, as the obligee named therein. Said provision reads, in part, as follows:

"* * * it shall be a condition precedent to any right of recovery hereunder that, in the event of any default on the part of the Principal, a written statement of the particular *facts* showing the date and nature of such default shall be immediately given by the Obligee to the Surety and shall be forwarded by registered mail to the Surety. * * *" (Emphasis ours.)

Appellant concedes that, under court decisions governing the matter, provisions for the obligee's giving the surety immediate notice, such as the foregoing, are to be construed to mean "within a reasonable time"; but it points to Orr's testimony to the effect that he knew "within the week" after his last payment to General Contracting Company "that a lien had been filed * * * or claims were being made for unpaid accounts" on the job; and, on the basis of such knowledge coming to Orr, as indicated, on or about February 11th, it argues that the 41 days which elapsed between that date and Orr's aforedescribed letter of March 25th, to the bonding company, was not a reasonable time under the circumstances. In support of the latter conclusion, and its argument that the trial court erred in its specific findings of fact and conclusions of law, as to the timeliness of said notice, appellee cites Palacine Oil Co. v. Commercial Casualty Insurance Co., 10 Cir., 75 F.2d 20. That case involved a liability indemnity insurance policy, one of whose conditions required the plaintiff to give immediate written notice upon the occurrence of an accident and to give like notice with full particulars of any *claim* made on account of such accident. There, plaintiff was notified of the accident on June 30th, and made an investigation thereof the following July 2nd, but did not give notice to the defendant insurance company until 36 days later, or August 5th. In the judgment there affirmed, the trial court held

such notice was not sufficient compliance with the above-described condition of the policy, since, under the circumstances, the plaintiff assured did not exercise reasonable diligence in giving the notice. Appellant seems to proceed upon the assumption that if the period which elapsed between plaintiff's investigation of the accident in that case, and his giving of notice, was an insufficient compliance with the provision of that insurance policy, then the greater period which elapsed here between appellee's admitted knowledge that "claims were being made for unpaid accounts", and his giving of notice, was likewise insufficient compliance with the bond provisions here involved. We do not think the cited case is controlling here because of the important difference between the wording of the condition there involved and the one here. The only provision of the policy involved there, that might be urged as analogous to the bond provision involved here, required *no more* of the assured than to give full particulars of any "claim" made on account of an accident covered by the policy. By the express wording of the condition involved here, appellee was to furnish appellant "a written statement of the particular *facts* showing the date and nature of" the contractor's, or bond principal's default. It is obvious that giving notice of the particulars about a "claim" may be far different, and require much less, than ascertaining "particular *facts* showing the date and nature" of a default. Interpreting the appellee's testimony in the light most favorable to appellant, and proceeding on the hypothesis that, as early as February 11th, he knew that at least one lien claim had been filed and that "claims were being made for unpaid accounts" on the job involved, it may be reasonably concluded that some investigation and time was required to ascertain whether or not such claims had a basis in fact, and to determine what were the particular facts concerning the date and nature of the contractor's default, if any. The filing of a lien claim is not ordinarily deemed the equivalent of the fact of the indebtedness which it concerns. As said in

Beebe v. Redward, 35 Wash. 615, 77 P. 1052, 1055: "It is at most only a tentative charge against the property it purports to bind, and is liable to be defeated * * * by showing that the indebtedness, or some considerable part thereof, is not owing." There was no evidence introduced in the present case to show what appellee (after learning February 11th, that claims were being made for unpaid accounts on the job) did, or what it was necessary for him to do, in order to ascertain the true facts concerning the date and nature of the contractor's default in discharging his obligations under the construction contract. Nor was there any evidence as to what would have been a reasonable time for completing such an investigation. In view of this state of the record, there is no evidentiary basis, or guide, for us to use in attempting to determine the correctness of the trial court's finding of timeliness; and we will not attempt to determine it as a matter of law. All we can say is that it cannot be regarded as contrary to the evidence, in view of appellant's failure to produce, and the record's failure to show, any evidence to the contrary other than, or without more than, the period of time-lapse, itself.

■ Under its second and third propositions, appellant argues that the trial court erred in its judgment for the further reason that the real contractor in the construction of the service station was General Contracting Company, to whom appellee's checks, in payment for said construction, were issued; and that, since said company was a partnership, or joint venture, which was a separate entity from Adams and Henry (its individual members) and the Bond in question purported to assure the performance of only Adams (just one of said associates), holding it liable (as the trial court's judgment did) for General Contracting Company's default in the payment of the debts incurred in said construction, purports to work a change in the terms of the bond and consequently releases it from all liability as surety. It takes the position that Karl K. Adams, the Principal in said bond, abandoned any previous inten-

tion he may ever have had of performing the contract, and his performance was actually undertaken and accomplished by General Contracting Company. Appellant's theory may be a good one, as an abstract proposition of law, but the evidence in this case is insufficient to overcome the trial court's findings and conclusions, none of which are compatible with said theory's application to the present case. Some of these findings and conclusions were to the effect that neither of the parties to the construction contract of September 20th, 1954, ever abandoned it; that it constituted the only contract ever entered into for the construction of the service station, and "that Karl K. Adams, d/b/a Adams Plumbing & Heating Company continued and remained the prime contractor for the construction of said" station. In support of its contention that the construction contract was really General Contracting Company's rather than Adams', appellant relies heavily on allegations in the pleadings of some of the lien claimants (in the lien foreclosure phase of the case) to the effect that their labor and/or materials were furnished at the behest of, or by contract with, General Contracting Company, without any mention of Adams, or Adams Plumbing & Heating Company. We note, however, that in granting said claimants recovery against Karl K. Adams, and the company in which he did business as sole trader (as well as against Adams and Henry, doing business as General Construction Company, otherwise known as General Contracting Company), the trial court, in the lien foreclosure judgment, found that the service station construction contract was made with the Adams company, and also found that the lien claimants' pleadings should be amended to conform to the proof. Without further describing the record or delineating the evidence, it is sufficient to say that we have carefully examined same and find it insufficient to support the argument under appellant's second and third propositions.

Having found appellant's argument insufficient to demonstrate error in the trial court's judgment, we are of the opinion,

and hold, that same should be, and is hereby, affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, WILLIAMS and CARLILE, JJ., concur.

JOHNSON and JACKSON, JJ., dissent.