MOBILE COMPONENTS, INC., a corporation, et al. Appellees,

v.

Verlee C. LAYON, Executrix of the Estate of Thomas Layon, Sr., Deceased, Appellant.

Verlee C. LAYON, Executrix of the Estate of Thomas Layon, Sr., Deceased, Appellant,

v.

FIRST NATIONAL BANK OF TULSA; The Outrigger, Inc.; Universal Contracting Corporation, a foreign corp.; Marti Stratton dba Marti's Commercial Interiors; Lewis Avenue Investment Company, an Oklahoma general partnership with Jack R. Sowles and James M. Metzker; Planned Residential Communities Construction Company of Oklahoma, Inc.; Hamilton Investment Trust, a voluntary business association of Massachusetts with Paul Stillman as a Trustee; Marvin Lasater dba Lasater Electric; D. McGlumphy dba Mac's Electric Co.; Concrete Specialties of Tulsa, Inc.; Raymond P. Semones dba Trilites Manufacturing Co.; Tom B. Childers; Murphy Paint & Drywall, Inc.; Professional Investors Life Insurance Company; Miller Construction Co. of Tulsa, Inc.; Turner Roofing and Sheet Metal, Inc.; Mobile Components Corporation, a foreign corporation; The Board of County Commissioners of Tulsa County, Oklahoma; Duoskin, Inc.; and Sizemore, Sack & Sizemore, Appellees.

No. 51141.

Supreme Court of Oklahoma.

Nov. 25, 1980.

Rehearing Denied Feb. 17, 1981.

Joseph A. McCormick and Robert L. Roark, of Hall, Sublett & McCormick, Tulsa, for appellees, First Nat. Bank of Tulsa & The Outrigger, Inc.

John R. Barker, of Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, for appellees, The Trust of Hamilton Inv. Trust, and Planned Residential Communities Const. Co. of Oklahoma, Inc.

Wesley R. Thompson, Sapulpa, for appellant.

Thomas A. Landrith, Jr., Tulsa, for amicus curiae, Almond Elec. Co., Inc.

David Noss, of Rheam & Noss, Tulsa, for amicus curiae, Wilson Fire Protection, Inc.

Paul E. Garrison, of Garrison, Pigman, Comstock & Thurston, Tulsa, for amicus curiae, Auxier-Scott Supply, Inc., Palmer Plumbing, Heating & Air Conditioning Co., Inc., Benjamin F. Mott dba Mott Roofing & Sheet Metal Co.

William J. Doyle, III, of Jones, Givens, Brett, Gotcher, Doyle & Bogan, Inc., Tulsa, for amicus curiae, Hale Plumbing, Inc.

J. Patrick Cremin, of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, for amicus curiae, Fred J. and Mary Ann Zalokar.

SIMMS, Justice:

This appeal concerns two lien foreclosure actions consolidated by the trial court. In 1973, Lewis Avenue Investment Company, as landowner, contracted to have a total of 975 apartment units constructed on two tracts of land, one in Tulsa and one in Broken Arrow. The carpeting for the units on both tracts was sub-contracted to Century Interiors, Inc. On July 17, 1974, Century filed a materialmen's lien statement in the amount of $17,115.37. The lien statement incorrectly described the Tulsa property for which the carpeting was furnished, but correctly described the property in Broken Arrow.

Appellant, as the assignee of these lien claims, sued below for foreclosure. Appellee Planned Residential Community Construction Company (PRCCC) bought the Broken Arrow property in January, 1975, with notice of the lien claim. Appellee Outrigger bought the Tulsa property in September, 1974, at which time, because of the incorrect description on the statement, it had no notice of the lien claim. Appellant, after the commencement of this action, was allowed to amend the lien statement to correctly describe the Tulsa property.

Appellees' motion for summary judgment was sustained at the pretrial conference. The trial judge ruled that the Oklahoma Mechanics' and Materialmen's Lien laws, 42 O.S.1971, §§ 141, et seq., were unconstitutional as a deprivation of property without due process of law. The constitutionality of these statutes is the only issue on appeal.[1]

We do not now determine if the trial court erred by allowing the description amendment to the lien statement, or by allowing one lien statement to suffice for two noncontiguous tracts of land.

42 O.S.1971, §§ 141, et seq., provide the statutory scheme through which a mechanic or materialman may claim a lien on real estate. A general contractor must file a lien statement within four months after the date upon which the last labor is performed, or materials last furnished, in the office of the clerk of the county where the land is located. The statement need only provide: the amount claimed and the items thereof as nearly as practicable; the names of the owner(s), the contractor, and the claimant; and a legal description of the property, all verified by affidavit. 42 O.S.1971, § 142.

The relevant provisions for subcontractors are the same, except that the lien statement must be filed within ninety days from the date of the last work performed or material furnished, and notice of the claim must be served to the owner. 42 O.S.1971,

---

1. This action concerns only 42 O.S.1971, §§ 141, et seq., the later amendments to those statutes, 42 O.S.Supp.1979, §§ 141, et seq., are not in question here.

§ 143.[2] The lien statement constitutes constructive notice of the claim to all purchasers subsequent to the date of the furnishing of the first material or performance of the first labor. 42 O.S.1971, § 141.

The claimant has one year to commence suit to enforce the lien. 42 O.S.1971, § 172. If no action is commenced within one year, the lien is canceled by limitation of law. 42 O.S.1971, § 177.[3]

The landowner may bring an action to discharge the lien at any time. 42 O.S.1971, § 177. He can also discharge the lien by posting a cash bond in a suitable amount. 42 O.S.1971, § 147. He has no other remedy. There is no provision that the claimant must post bond to indemnify the landowner for costs he might incur in clearing title to his property.

Appellant makes no claim that the liens it asserts were not the result of state action, but only that no significant property interest is deprived by the mere filing of the lien statement.

Appellees' constitutional attack on the Oklahoma lien statutes is based primarily on four recent decisions by the United States Supreme Court concerning the requirements of due process where a state statute gives a creditor prejudgment relief.

In *Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)*, a Wisconsin statute allowing a creditor to freeze the wages of an alleged debtor was held to be unconstitutional. The Court ruled that before the debtor could be deprived, even temporarily, of his wages, due process of law required that he be given notice and an opportunity to be heard.

Three years later, in *Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 349 (1972)*, the Court invalidated prejudgment replevin statutes of Florida and Pennsylvania, which allowed property to be seized by an ex parte application of one claiming a right in the property. The Court held that due process required that, except in unusual circumstances, the debtor must be given notice and an opportunity to be heard before he can be deprived, even temporarily, of any significant property interest.

In *Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)*, a Louisiana statute allowing sequestration of property sold under an installment sale was upheld. The Court distinguished *Fuentes*, by saying that in this case the seizure was necessary to protect the rights of the seller in the collateral, as he had a valid vendor's lien. The statute did not provide for notice and a hearing, but did have other procedural safeguards that the Court found to be a sufficient accommodation of the respective interests involved. The statute required: an affidavit of facts; review by a judge; a bond to be posted by the creditor; and a prompt post seizure hearing.

Most recently in *North Georgia Finishing Inc. v. Di-Chem, Inc., 419 U.S. 601, 96 S.Ct. 719, 42 L.Ed.2d 751 (1975)*, the Court overturned a Georgia statute allowing the freezing of a commercial bank account. The statute required an affidavit to be filed with the court clerk, and a bond posted for twice the amount claimed. The Court held this statute unconstitutional because it provided for no prior notice and opportunity to be heard, nor any judicial participation in the proceeding before garnishing the account.

These cases enunciate the current due process standards required for prejudgment garnishment and replevin statutes. In the absence of extraordinary circumstances, certain procedural safeguards must be followed before a person is deprived of a significant property interest. Generally, he must be given notice of the creditor's claim, and an opportunity to be heard before his property may be seized. However, if the

2. The Legislature amended the statute in 1977 to provide for notice of the claim to the landowner from the contractor as well as the subcontractor. 42 O.S.Supp. § 143.1.

3. Under our Title Examination Standards, 16 O.S.1971, Ch. 1, App., St. 14.1, unreleased liens may be disregarded where foreclosure has not been filed within the statutory time, and the Clerk requested to release same pursuant to 42 O.S. § 177.

interests of the creditor cannot be protected by allowing such prior notice and hearing, then there must be other procedural safeguards to sufficiently protect the property rights of the alleged debtor. These standards are meant to be flexible, to constitutionally accommodate the rights of all parties involved.

These requirements attach only when there has been a deprivation of a significant property interest. Appellees claim that a clear title is such a property interest. A lien, they argue, (1) clouds the title, and (2) restricts the alienation of the land, or at least reduces the market value; (3) the filing of the lien statement constitutes a taking; and (4) the provisions of the Oklahoma Mechanics' and Materialmen's lien statutes do not have the sufficient procedural safeguards required by the above cases, and are therefore unconstitutional.

█ The mere filing of the lien statement does not entitle the claimant to a lien on the land. 42 O.S.1971, § 141 provides that only a person who has in fact done work or furnished material on the property is entitled to a lien.[4] This presupposes a judicial determination. We said in *Hartford Accident and Indemnity v. Orr, Okl., 321 P.2d 373, 376–377, (1958)*:

> "The filing of a lien claim is not ordinarily deemed the equivalent of the fact of the indebtedness which it concerns. As was said in *Beebe v. Redward*, 35 Wash. 615, 77 P. 1052, 1055: 'It is at most only a tentative charge against the property it purports to bind, and is liable to be defeated * * * by showing that the indebtedness, or some considerable part thereof, is not owing.' "

The lien claimant gets nothing before judgment. The only prejudgment charge against the property is the notice of the lien claim. This notice serves the important functions of protecting the workman's claim from subsequent assignment of the property by the landowner, and of informing potential buyers of a possible economic charge running with the land. Real property law in this country is founded upon principles of notice. To hold that the notice alone can constitute a taking of a significant property interest would severely restrict its entire purpose. The Supreme Court of Colorado, in rejecting a very similar constitutional attack to their lien statutes observed, in *Bankers Trust Co. v. El Paso Pre-Cast Co., et al., Colo. 560 P.2d 457, 462–463, (1977)*:

> "To require the full panoply of due process protections before filing a lien statement would impair the notice function of the lien statements. In the interval between the time of the work, the furnishing of materials or services giving rise to lien claim and the hearing on the lien, prospective purchasers would have no notice of the potential lien. The very 'deprivation' complained of by [appellant], the difficulty in alienating property against which a lien has been filed, indicated the effectiveness and importance of the notice function of lien statements."

█ The issue of the constitutionality of lien statutes relative to federal due process requirements has been considered by many other jurisdictions in the past few years. While some hold that the filing of the lien statement constitutes a significant taking of a property interest,[5] we cannot do so.

4. Under our slander of title action, 16 O.S.1971 § 79 the landowner may recover costs, attorney fees and damages suffered for a slanderous notice of claim. 42 O.S.Supp.1980 § 142.4 makes it a felony for any original contractor to falsify a lien statement to any owner of a dwelling.

5. Jurisdictions declaring their mechanics' lien statutes unconstitutional on the grounds that they are violative of due process include: *Roundhouse Construction Corp. v. Telesco Masons Supplies Co., Inc.,* 362 A.2d 778, 168

*Conn. 371, vacated 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29, on remand 365 A.2d 393, 170 Conn. 155, cert. den. 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (Conn.1974); Barry Properties, Inc. v. Fick Bros. Roofing Co.,* 353 A.2d 222, 277 Md. 15 (Md.1976). *Jurisdictions upholding the constitutionality of their mechanics' lien statutes on the grounds that they contain procedural safeguards sufficient to satisfy due process include: Connolly Development, Inc. v. Superior Court of Merced County, 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637, appeal dismissed, 429 U.S. 1056, 97 S.Ct. 778,*

We are more persuaded by the rationale adopted by the majority of jurisdictions which have considered the issue, that the filing of the lien statement is a *de minimis* taking to which due process protection does not attach.[6] The landowner is not deprived of substantial use and enjoyment of the property. The statement merely gives notice to all that a claim *may* be enforced against the land. Without suit being filed, the claim itself expires by limitation of law. 42 O.S.1971, § 177. In this regard, it is much the same as the lis pendens notice required when a suit is commenced concerning title to land. Appellees contend that the statute allows lien claimants to "extort" their claim from the landowner who wants to discharge the lien. We do not think that this danger is so apparent. If so, common sense would require a pre-filing hearing on the merits of a claim, not only for lien suits, but for any civil action, resulting in an unbearable administrative burden on the courts. On balance, the notice function, as well as administrative necessity, outweighs the minimal interference to property resulting from mere filing of the claim. We agree with the view expressed by the Missouri Supreme Court in *Home Building Corp. v. The Ventura Corp., et al., Mo., 568 S.W.2d 769 (1978)*, where the court noted

that the existence of the lien may have an economic effect and said:

" . . . but that does not deprive the owner of a significant property interest. The possession and use of the property is retained and the owner may sell, lease or encumber. The situation is comparable to several others wherein a pending suit has some economic impact on an owner but does not deprive it of a significant property interest . . . It is comparable to the filing of a lis pendens notice. Such suits are instituted and maintained without the requirement of a hearing before filing to test the validity of the asserted claim." (At 774).

The United States Supreme Court has spoken only indirectly on the constitutionality of mechanics' lien statutes by its summary affirmance of *Spielman-Fond, Inc. v. Hanson's, Inc., 379 F.Supp. 997 (D.Ariz. 1973), aff'd. 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974)*. In this case, the Arizona lien statutes were upheld by the district court. While we realize the Supreme Court's summary affirmance does not necessarily show approval of the reasoning used by the District Court[7], we agree with the rationale expressed therein where it was said:

So. Cent. Dist. Pentecostal Church of God of America, Inc. v. Bruce-Rogers Co., Ark., 599 S.W.2d 702 (1980).

---

50 L.Ed.2d 773 (Cal.1976); Ruocco v. Brinker, 380 F.Supp. 432 (Fla.1974).

**6.** Jurisdictions upholding the constitutionality of their mechanics' lien statutes on the grounds that the filing of a mechanics' lien does not constitute the taking of a significant property interest include: *Spielman-Fond v. Hanson's Inc., 379 F.Supp. 997, affirmed 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (Ariz.1973); Nelson-American Developers, Ltd. v. Enco Engineering Corp., 337 So.2d 729 (Ala.1976); Banker's Trust Co. v. El Paso Pre-Cast Co., 560 P.2d 457 (Colo.1977); Tucker Door & Trim Corp. v. 15th St. Co., 221 S.E.2d 443, 235 Ga. 727 (Ga.1975); Keith Young & Sons Const. Co. v. Victor Senior Citizens Housing, Inc., 262 N.W.2d 554 (Iowa 1978); Carl A. Morse, Inc. v. Rentar Industries Development Corp., 56 A.D.2d 30, 391 N.Y.S.2d 425 (N.Y.1975); B & P Development Co. v. Walker, 420 F.Supp. 704 (Penn.1976); Cook v. Carlson, 364 F.Supp. 24 (S.Dak.1973); In re Thomas A. Cary, Inc., 412 F.Supp. 667 (Va. 1976); Home Bldg. Corp. v. The Ventura Corp. and Housing Authority of the City of Nevada, Missouri, 568 S.W.2d 799 (Mo.1978); Silverman v. Gossett, 553 S.W.2d 581 (Tenn.1977);*

**7.** The United States Supreme Court summarily affirmed *Spielman-Fond* without opinion. The precedential significance of a summary affirmance by the United States Supreme Court was discussed by Justice Burger in *Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 541, 42 L.Ed.2d 521 (1975)*, when he wrote: "When [the Supreme Court] summarily affirm[s] without opinion the judgment of a three-judge district court [the Court] affirm[s] the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established."

"Here, a lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him." (379 F.Supp. at 999).

Appellees claim that this is an "unrealistic" appraisal of the effect the lien filing has on the property. We need only note that in the case at bar, Lewis Avenue Investment Company, the original landowner in this case, was in fact able to sell the Broken Arrow property to appellee PRCCC notwithstanding the existence of the very lien statement complained of here.

Appellees cite two state cases where the states' mechanics' lien laws were held unconstitutional on due process grounds, and urge us to adopt the rationale expressed therein. *Roundhouse Construction Corp. v. Telesco Masons Supplies, Conn., 362 A.2d 778, 168 Conn. 371, vacated and remanded 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 (1975), reaff'd on both state and federal grounds, Conn., 365 A.2d 393, 170 Conn. 155, cert. denied, 429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). Barry Properties Inc. v. Fick Bros. Roofing Co., Md., 353 A.2d 222, 277 Md. 15 (1976).* We do not find these cases persuasive. In *Barry,* the court found the lien statutes unconstitutional because the lien attached to the property as soon as the work was performed or the materials supplied. It then upheld the validity of the lien claimed in that case by "excising" the offending portion and construing the statute to mean that the lien claimant really had only a possibility of a lien before judicial determination. Therefore, the court reasoned, the lien statement did not legally divest the landowner of any

interest in his property prior to such judicial determination, which, of course, afforded adequate due process. We do not see how this result is consistent with the court's holding that the lien deprives the landowner of a significant property interest. We agree with the dissenting opinion at page 237 (dissenting only to result) that:

"Appellant was either deprived of due process or he was not, and if he was, the deprivation cannot be rectified by acknowledging it on the one hand and ignoring it on the other. If it is the view of the majority that appellant suffered no denial of due process, that holding is dispositive of the case and this Court has no business in purporting to hold the lien facially unconstitutional."

In the *Roundhouse* case, we note that the United States Supreme Court denied certiorari because the judgment rested on adequate state ground, at *429 U.S. 889, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976).* We think it is reasonable to conclude, as the court did in *South Central District, etc. v. Bruce-Rogers Co., Ark., 599 S.W.2d 702 (1980),* see footnote 2, that the United States Supreme Court considered its summary affirmance in *Spielman-Fond, Inc. v. Hanson's, Inc., supra,* to be applicable, or the state ground would have been immaterial.

Moreover, we agree with the opinion expressed by the court in *Home Building Corp. v. Ventura Corp., et al., supra,* at 775, about these two cases that:

"They impose a very strict limitation on the reasonable efforts of a state to protect those who supply labor and materials to make improvements to real estate. Such results, in our judgment, are not dictated by the decisions in *Sniadach, Fuentes, Mitchell,* and *North Georgia.*"

We hold that the filing of a lien statement under our mechanics' and materialmen's lien statutes is only a *de minimis* interference with the use and enjoyment of the property involved.[8] As such, it does not

---

8. The legislature, since the filing of this action, has become more sensitive to the kinds of issues raised by appellants, evidenced by its recent enactments of protective provisions for the landowner. 42 O.S.Supp.1979 § 143.1 now requires notice be given the landowner by any lien claimant (see fn. 2). 42 O.S.Supp.1980 §§ 142.1, 142.2 require an original contractor to

amount to a taking of a significant property interest to which the requirements of either state or federal due process attach. Therefore, the summary judgment granted appellees holding those statutes unconstitutional is REVERSED.

REVERSED AND REMANDED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, DOOLIN, HARGRAVE and OPALA, JJ., concur.

HODGES, J., dissents.

HODGES, Justice, dissenting.

I cannot agree with the majority opinion that the filing of a lien statement under the Oklahoma Mechanics' and Materialmen's lien statutes constitute only a de minimis interference with the use and enjoyment of real property [1] or that it does not approach

a taking of a significant property interest requiring the protection of state and federal due process. Nor am I persuaded that because the original landowner in this case was "in fact able to sell the Broken Arrow property to appellee, PRCCC, notwithstanding the existence of the very lien statement complained of here" that the filing of the lien statement was not detrimental, and that the statutes are not unconstitutional. The decision in this case has a sweeping effect throughout the state and the building industry. Reliance on the facts in this particular case exemplifies the old saw, "bad facts make bad law."

I

The effective statutory provisions permit a general contractor to file a lien statement

furnish the owner of property occupied as a dwelling a notice, before the commencement of any work or furnishing of any material, to be signed by the owner, informing the owner of certain rights and liabilities to which he is subject under the lien laws. Failure to give such

notice, dated and signed by the landowner, renders the lien unenforceable.

1. The mischief which may be wrought by frivolous, malicious, or fraudulent lien claimants is graphically illustrated by an article which appeared in The Daily Oklahoman in 1979.

## BANKS, OFFICIALS LAUNCH SEARCH

# Liens Tie Up Billions in Colorado

DENVER (AP) — A search continued Saturday for a "landowner and general entrepreneur" who filed at least $154.5 billion in liens against property owned by nearly a score of Coloradans, including Denver's mayor, district attorney and police chief.

Authorities said Kenneth Winchell filed nearly 100 liens in various courts in Denver and Summit County.

A bench warrant for Winchell's arrest was issued by Denver County Judge George Manerbino. Authorities said Winchell could face charges ranging from second-degree perjury to criminal mischief.

Denver District Judge Joseph Lilly also issued an order barring Winchell from filing more liens.

Winchell, who listed no home address, owns some land near Vail. Some of the liens he filed were against two banks which are suing him for alleged nonpayment of funds totaling more than $25,000.

"We think he may be part of some right-wing group that files these kinds of things," said one official, who asked not to be identified.

Authorities in Nebraska say the courts in that state have been besieged since May by a spate of similar liens and lawsuits. The court actions are filed by persons angered by bureaucracy, authorities say.

"We think they're part of an organized group, but we're not sure," said a Nebraska official.

The liens, which cost only $2 to file, are legal documents claiming some interest in a property, usually a debt owed by the owner. They may be filed without showing any cause and, even if they have no basis in fact, can stop any sale, transfer or re-mortgage of the property. Fighting a lien can cost hundreds of dollars in legal fees.

The liens filed by Winchell protest income taxes and water laws and accuse one of four banks named in the liens of violating his constitutional rights.

"It's certainly a new twist," said one of the lien targets, who asked not to be identified. "You don't often hear of somebody who owes money filing liens. It's usually the other way around."

Winchell reportedly owes money to at least three Denver banks.

The liens he filed claim damages ranging from $2 million to $950 million. They name, among others, bank directors and officers, Denver Mayor Bill McNichols, District Attorney Dale Tooley and Police Chief Art Dill.

within four months after the date upon which the last labor is performed, or materials supplied to the job in the office of the clerk of the county where the land is situated. The statement needs only to divulge: the amount claimed and the items thereof as nearly as practicable; the names of the owner; the contractor and the claimant; and a legal description of the property.[2] The statute which is the subject of this appeal contains no provision for notice to the landowner.[3] There is no protective legislation to prevent the filing of an exaggerated or inflated claim, nor is there a provision which requires the posting of a bond to indemnify the landowner for costs and expenses he might incur in clearing title to his property.

The relevant provisions relating to subcontractors are the same as for general contractors, except that the lien statement must be filed within ninety days from the date of the last work performed or supplies furnished by the subcontractor and notice of the filing of the lien must be served on the owner.[4] There is no requirement that a foreclosure action be commenced for up to one year subsequent to the filing date.[5] A landowner may clear title to his property by posting bond in a suitable amount[6] or commencing a quiet title action. There is no other available remedy.

It is contended by the appellees that the Mechanics' and Materialmen's Lien Laws of the State of Oklahoma involve state action, and violate both the State and Federal Constitutions by depriving persons of property without due process of law because the statutes fail to provide for: any type of timely notice or hearing on the probable merits of the claim against the owners' property; and judicial participation at an early state of the proceedings; or for any

type of bond or security to protect the owner against a wrongful taking.

## II

Before the due process clause of the United States Constitution can be invoked, it must be shown that state action is involved in the proceedings. Private action, however harmful, is not unconstitutional.[7] The fact that a state legalizes an action does not automatically mean that there has been state action. Mechanics' liens are created by the legislature. The filing of the lien involves a gamut of steps, all of which are mandated by state statutes. For a contractor to perfect his claim, he must file with the court clerk an affidavit stating the facts surrounding his claim which must be verified. The claim becomes a matter of public record, recorded by state employees in a state courthouse, and ultimately adjudicated in a state court. There can be no question but that the filing of the mechanics' lien involves a substantial amount of state action, and invokes the due process clauses of the State and Federal Constitutions.[8]

## III

This is a case of first impression in Oklahoma, and the United States Supreme Court has not decided specifically what the due process clause of the Fourteenth Amendment requires concerning mechanics' liens. Resolution of the issue before us, consequently, turns not upon the application of specific precedent, but upon the general principles established by a line of decisions involving creditors' remedies.

In *Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969),* the United States Supreme Court

---

**2.** 42 O.S.1971 § 142.

**3.** The statute was amended in 1977 to provide for notice by mail to the landowner. See 42 O.S.Supp.1977 § 143.1.

**4.** 42 O.S.1971 § 143.

**5.** 42 O.S.1971 § 172, 177.

**6.** 42 O.S.1971 § 147.

**7.** *Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).*

**8.** *See Barry Properties, Inc. v. Fick Bros. Roofing Co., 277 Md. 15, 353 A.2d 222 (Md.1976); Connolly Development, Inc. v. Superior Court of Merced Co., 553 P.2d 637 (Cal.1976).*

voided a Wisconsin prejudgment garnishment statute which permitted a creditor to freeze the wages of an alleged debtor, without prior notice or hearing, even though the creditor had no previous interest in the wages. The summons was issued by the court clerk, at the request of the creditor's attorney, without any judicial participation. The court held that, absent extraordinary circumstances, this statutory scheme violated the fundamental principles of due process.

Three years later, in the case of *Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972),* the court invalidated prejudgment replevin statutes in Florida and Pennsylvania, which allowed state agents to seize a person's personal property upon the ex parte application of another person claiming a right in the property. There was no prior notice or hearing concerning the writ, nor was there any judicial participation in its issuance. The court reiterated that: except in unusual situations, notice and an opportunity to an adversary-type hearing must be provided *before* an alleged debtor can be deprived of his property; the fact that the deprivation may be temporary and non-final is irrelevant; and due process protection extends to any significant property interest.

There was some clarification by the court in *Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).* A Louisiana statute permitting sequestration of personalty to enforce the vendor's lien of a creditor who had made an installment sale of goods was upheld. The sequestration was made without prior notice or hearing. However, to obtain the writ, the creditor had to specify in an affidavit the facts, not conclusions, which supported his claim. The affidavit was examined by a judge, and upon his determination that it was adequate, the writ was issued. The creditor was required to file a bond which would compensate the debtor if the sequestration was unjustified. The debtor was allowed a prompt post-seizure hearing, and if the creditor failed to substantiate his claim, the debtor recovered not only his property, but also damages and attorneys' fees. The

Court concluded that the judicial participation in these proceedings, and the protection afforded both sides, sufficiently accommodated the conflicting interests of the parties and satisfied the requirements of due process.

The Supreme Court's most recent opinion dealing with prejudgment garnishment remedies and due process is *North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).* In this case, the Court overturned, as contrary to due process, a Georgia statute authorizing garnishment in the form of freezing a commercial bank account. To obtain the garnishment, the claimant had to file an affidavit with the court clerk, stating the amount claimed, then post bond equal to twice that amount. The debtor could also dissolve the claim by filing a bond. The Court held this statutory scheme unconstitutional because it provided no prior notice or hearing, nor did it meet the *Mitchell* standard, which requires judicial participation in the proceedings, absent notice and hearing.

In analyzing these cases to determine the current due process standards for prejudgment garnishment statutes, it appears that in the absence of extraordinary circumstances, there are two avenues which are constitutionally permissible. *Sniadach* and *Fuentes* indicate that before a debtor can be deprived of a significant property interest, the creditor must provide him with prior notice and hearing on the probable merits of the creditor's claim. If prior notice and hearing are not provided, *Mitchell* requires that: if an ex parte order is issued, there must be judicial participation in its issuance; the creditor must produce a sworn affidavit alleging specific facts entitling him to possession; there must be a prompt post-seizure hearing; and the creditor must post bond to protect the debtor against any damages, including attorney fees which he might incur as a result of the wrongful taking of his property.

IV

Although the majority relies heavily on *Spielman-Fond v. Hanson's, Inc., 379*

*F.Supp. 997 (D.Ariz.1973); aff'd. 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974),*[9] this case is of little assistance in interpreting the Oklahoma lien laws. The pertinent Arizona Statutes, A.R.S. § 33–981, et seq., provide procedural safeguards which the Oklahoma Statutes, 42 O.S.1971 § 141, et seq., lack. Actions to foreclose liens in Arizona must be brought within six months of filing, or the lien is discharged. The property owner may also dissolve the lien by posting a bond one and one-half times the amount claimed. If the lien is filed by one other than the contractor, the contractor must defend the action at his own expense. When the claim is filed, copies of the notice of the lien must be supplied to the county recorder where the property is located, and to the property owner, if he is within the county.

While the Oklahoma statutes do not contain some of the safeguards provided by the Arizona statutes, we would further disagree with the holding in *Spielman-Fond* that the deprivation caused by the filing of the mechanics' lien was *de minimis*. The Arizona court reasoned that the lien deprived the owner of neither the possession, nor the use of his property, and that, although the abili-

ty to sell or obtain credit on the property might be curtailed, the owner was not legally deprived of his right to sell or encumber the land. The court followed the rationale of *Cook v. Carlson, 364 F.Supp. 24 (D.S.D.1973)* and ascertained that, although the lien may diminish the value of the land to the owner, the harm is often offset by the value added by the improvement upon which lien is based. The court also decided, even though securing a buyer might be difficult, the owner still had the right to alienate and that the lien did not deprive the owner of this right.

Even though the United States Supreme Court has had an opportunity to consider the constitutionality of statutorily created liens, it has failed to do so, and thus no clear precedent exists.[10] While some courts have elected to adhere to the theory that the filing of a mechanics' lien is a *de minimis* taking of property not worthy of due process protection,[11] I cannot do so. I am persuaded by the rationale adopted by other jurisdictions which holds that the imposition of a mechanics' lien without any judicial assessment of its merits constitutes a significant taking of property and is violative of due process.[12]

**9.** To file a mechanics' lien in Arizona, the claimant must file the claim with the county recorder, and serve a copy of this claim with the property owner if he is within the county where the property is located. If the owner is not in the county, it is not necessary to provide him with notice. The claim must include a description and location of the property, the name of the owner, name of the claimant, the amount due and the date the work was completed. The claim is made under oath. The original contractor must file the lien within ninety days of completion of the work, all others have sixty days. The lien stays in effect for six months unless an action is brought within that time to foreclose. The owner can discharge the lien by posting bond in the amount of one and one-half times the amount of the claim.

**10.** See majority opinion, note 4.

**11.** Jurisdictions upholding the constitutionality of their mechanics' lien statutes on the grounds that the filing of a mechanics' lien does not constitute the taking of a significant property interest include:

*Spielman-Fond v. Hanson's, Inc., 379 F.Supp. 997 (D.Ariz.1973) aff'd. 417 U.S. 901, 94 S.Ct.*

*2596, 41 L.Ed.2d 208, (1974); B & P Development Co. v. Walker, 420 F.Supp. 704 (W.D. Penn.1976); In re Thomas A. Cary, Inc., 412 F.Supp. 667 (E.D.Va.1976); Cook v. Carlson, 364 F.Supp. 24 (D.S.D.1973); Home Building Corp. v. The Ventura Corp. and Housing Authority of the City of Nevada, Missouri, 568 S.W.2d 769 (Mo.1978); Keith Young & Sons Construction Co. v. Victor Senior Citizens Housing, Inc., 262 N.W.2d 554 (Iowa 1978); Bankers Trust Co. v. El Paso Pre-Cast Co., 560 P.2d 457 (Colo.1977); Carl A. Morse, Inc. v. Rentar Industries Development Corp., 56 A.D.2d 30, 391 N.Y.S.2d 425 (N.Y.1977); Silverman v. Gossett, 553 S.W.2d 581 (Tenn. 1977); Nelson-American Developers, Ltd. v. Enco Engineering Corp., 337 So.2d 729 (Ala. 1976); Tucker Door & Trim Corp. v. 15th St. Co., 235 Ga. 727, 221 S.E.2d 433 (1975).*

**12.** Jurisdictions declaring their mechanics' lien statutes unconstitutional on the grounds that they are violative of due process include:

*Roundhouse Construction Corp. v. Telesco Masons Supplies Co., Inc., 168 Conn. 371, 362 A.2d 778 (1975), vacated 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29, on remand 179 Conn. 155, 365 A.2d 393, cert. den. 429 U.S. 889, 97*

The purpose of the due process clauses is to rest the rights of all persons upon the same rule under similar circumstances.[13] The imposition of a mechanics' lien without notice results in a significant taking of property. A great deal of time, effort and money is required to dislodge the cloud on the landowner's title. While the lienor is not required to post a bond to protect the owner from losses he might incur from the lien, or bear any other expense in order to impose a possibly invalid lien; the landowner is required to post a bond equal to the amount of the claim, attorneys' fees, court costs and interest.[14] This does not provide equal protection to the debtor and the claimant.

The greatest advantage in owning land is often not the actual possession of the property, but the collateral benefits which are derived from ownership.[15] These include the right to alienate, encumber, mortgage, lease, and acquire equity. A mechanics' lien has a drastic effect on these privileges. It clouds the title to the property, making it extremely difficult or even impossible to sell or mortgage the land. Even if a willing buyer is found, the owner often has to accept much less than the actual value of the property, and may, in some instances, be forced to pay an invalid claim in order to clear title to his property in time for a pending transaction to be consummated. The fact that some improvements have been made on the land is little comfort to the owner whose property has suffered a substantial diminution in value, especially when the lien is invalid or was filed because the owner has refused to pay for improvements which have been done in a shoddy or unworkmanlike manner.

## V

The Mechanics' and Materialmen's Lien Statutes of the State of Oklahoma, 42 O.S. 1971 § 141, et seq., violate both the State and Federal Constitutions because they deprive persons of a significant property interest without due process of law. The Oklahoma statutes fail to meet either *Fuentes* or *Mitchell* standards. There is no prior notice or hearing, nor is there any judicial participation in the process. Almost all of the state statutes which have been found constitutional contain safeguards that Oklahoma's laws lack.[16] The Arizona statutes which were held constitutional in *Spielman-Fond* provided for notice to the owner if he was in the county. The Oklahoma statute, in effect at the time of this litigation did not provide for any notice to the property owner by the contractor.

With the exception of lack of notice to the landowner, the most apparent deficiency in the Oklahoma Mechanics' Lien Law is the absence of any provision for an immediate post-filing hearing to determine the validity of the lien. In *Connolly Dev., Inc. v. Superior Court*, 17 Cal.3d 803, 822, 132 Cal. Rptr. 477, 553 P.2d 637, 650 (1976), the California Supreme Court determined that the recordation of a mechanics' lien deprived the property owner of a significant property interest, and constituted a taking within the meaning of the federal and state due process clauses. The court reasoned, however, that the California lien laws comported with due process requirements because twenty days *before* recording a mechanics' lien the claimant was required to serve a preliminary notice upon the owner,

S.Ct. 246, 50 L.Ed.2d 172 (1976); *Barry Properties, Inc. v. Fisk Bros. Roofing Co.*, 277 Md. 15, 353 A.2d 222 (1976).
Jurisdictions upholding the constitutionality of their mechanics' lien statutes on the grounds that they contain procedural safeguards sufficient to satisfy due process include:
*Ruocco v. Brinker*, 380 F.Supp. 432 (S.D. Fla.1974); *Connolly Development, Inc. v. Superior Court of Merced County*, 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637, appeal

dismissed 429 U.S. 1056, 97 S.Ct. 778, 50 L.Ed.2d 773 (1976).

13. *Frost v. Corp. Comm'n.*, 278 U.S. 515, 522, 49 S.Ct. 235, 238, 73 L.Ed. 483 (1929).

14. See 42 O.S.1971 § 147.

15. D. F. Lowry, Jr., "Creditors' Rights: The Constitutionality Of Oklahoma's Mechanics' Lien Law," 31 Okla.L.Rev. 148, 159 (1978).

16. See note 11, supra.

the contractor, and the construction lender.[17] By granting the owner twenty days advance notice of the lien, [a safeguard not provided by the sequestration law upheld in *Mitchell*], the California statutes permit the owner to investigate the basis of the lien, and seek a hearing before the lien becomes effective. This is a much greater protective device than the *Mitchell* right to ex parte judicial review of the application for a writ of sequestration. In California, upon receipt of the notice from one not entitled to claim a lien, the owner or lender may immediately file suit to enjoin the assertion of the lien.[18] By utilization of a temporary restraining order if necessary,[19] the property owner may secure a hearing before the lien is imposed, or he may seek immediate declaratory relief.[20] Actions for declaratory relief in California may claim priority on the calendar of the trial court.[21] The Oklahoma statutes do not provide for priorities on the court's calendar, and a property owner seeking relief pursuant to 42 O.S.1971 § 177 would be subject to the same delays as in any civil action.

Because mechanics' liens are imposed ex parte by the creditor and significantly affect the rights of the property owner, the imposition thereof poses a serious problem of procedural due process. The United States Supreme Court has clarified the requirements necessary to guarantee due process of law. In *Fuentes*, the Court held that due process requires prior notice, and an opportunity to be heard.[22] *Mitchell* held that a reasonable alternative is judicial participation in the process, and the posting of a bond to insure against any damages and attorney fees incurred. Even if the due process clauses do not require notice and hearing prior to every deprivation of a sig-

nificant property interest, they do require a hearing at a meaningful time in a meaningful manner.[23] In failing to provide for an immediate post-perfection hearing, the mechanics' lien law leaves the debtor at the mercy of his creditor without providing any additional protection for the interest of the debtor. The procedural deficiencies of the Oklahoma lien laws render them unconstitutional.

---

**17.** Cal.Civ.Code §§ 3097, 3114, 3160.

**18.** Cal.Code Civ.Proc. § 526.

**19.** Cal.Code Civ.Proc. § 527.

**20.** Cal.Code Civ.Proc. § 1060.

**21.** Cal.Code Civ.Proc. § 1062a(a).

**22.** See *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 313–315, 70 S.Ct. 652, 656–657, 94 L.Ed. 865, 872–874 (1949); and

*Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713, 719 (Okla.1968).

**23.** *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). See also J. P. Ward, "The Constitutional Validity of Mechanics' Liens Under The Due Process Clause—A Reexamination After *Mitchell* and *North Georgia,* 55 B.U.L. 263 (1975).